STATE of Wisconsin, Plaintiff-Respondent,

v.

Joseph F. VOLK, Defendant-Appellant.

Court of Appeals

*No. 01–3342–CR. Submitted on briefs August 21, 2002.—Decided October 16, 2002.*

**2002 WI App 274**

(Also reported in 654 N.W.2d 24.)

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Charles Bennett Vetzner*, assistant state public defender.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle*, attorney general, and *Lara M. Herman*, assistant attorney general.

Before Nettesheim, P.J., Anderson and Snyder, JJ.

¶ 1. NETTESHEIM, P.J. A jury found Joseph F. Volk guilty of aggravated battery based upon a domestic violence incident involving his live-in girlfriend.[1] Volk appeals from the judgment of conviction and from an order denying his motion for postconviction relief.[2]

¶ 2. Volk makes two arguments on appeal. First, he argues that the trial court erred in admitting "other

---

[1] The jury also found Volk guilty of disorderly conduct arising out of the same incident.

[2] Volk was convicted of aggravated battery pursuant to Wis. Stat. § 940.19(6) and as a repeat offender pursuant to Wis. Stat. § 939.62 (1999–2000). All statutory references are to the 1999–2000 version unless otherwise indicated.

acts" evidence regarding prior incidents of domestic abuse against his former wife. Second, Volk argues that the trial court erroneously applied the habitual criminal penalty enhancer to the extended supervision portion of his sentence under the truth-in-sentencing law. We reject Volk's evidentiary argument. However, we agree with Volk's sentencing argument. We hold that WIS. STAT. § 973.01(2)(c) does not authorize a sentencing court to impose any portion of a penalty enhancer as extended supervision. Therefore, we reverse the sentencing portion of the judgment and the postconviction order that rejected Volk's challenge to the sentence. We remand for a resentencing consistent with this opinion.

¶ 3. We will set forth the relevant procedural and historical facts as we discuss each of the issues on appeal.

## DISCUSSION

### Admission of Other Acts Evidence

¶ 4. On March 20, 2000, the State filed a criminal complaint against Volk alleging aggravated battery and disorderly conduct as a repeat offender. The complaint charged Volk with hitting his live-in girlfriend, Rhonda Swim, in the face, pushing her to the floor and sticking his fingers down her throat causing her to spit up blood and causing damage to her tongue and throat. The repeater allegation indicated that Volk had previously been convicted of two counts of battery by a repeat offender on March 21, 1994, and battery as a repeat offender on August 29, 1994. The complaint noted that the previous convictions pertained to acts of domestic violence against his former spouse, Susan Love Volk, and that Volk had been arrested on seven occasions for

"domestic violence-related battery." Except for the post-conviction proceedings, Volk represented himself in the trial court.

¶ 5. Prior to trial, the State filed a motion for the introduction of "other acts" evidence pursuant to Wis. STAT. § 904.04.[3] Specifically, the State sought to introduce six prior documented acts of domestic violence committed by Volk against his former wife. The State sought admission of the evidence to prove Volk's intent, as well as to negate absence of mistake or accident. In addition, the State sought to refute Volk's statement to the police that Swim's injuries were caused when she "bit her own lip." Volk objected, arguing that the incident with Swim differed from his assaults on his former wife and, therefore, evidence as to his prior assaults would confuse the jury. Volk additionally argued that the prejudicial effect of the evidence would outweigh its probative value.

---

[3] WISCONSIN STAT. § 904.04 governs character and "other acts" evidence and provides in relevant part:

> **(1)** CHARACTER EVIDENCE GENERALLY. Evidence of a person's character or a trait of the person's character is not admissible for the purpose of proving that the person acted in conformity therewith on a particular occasion, except:
>
> (a) *Character of accused.* Evidence of a pertinent trait of the accused's character offered by an accused, or by the prosecution to rebut the same;
>
> . . . .
>
> **(2)** OTHER CRIMES, WRONGS, OR ACTS. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. This subsection does not exclude the evidence when offered for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

¶ 6. Following a hearing on October 3, 2000, the trial court granted the State's request for admission of the "other acts" evidence. Applying the analysis set forth in *State v. Sullivan*, 216 Wis. 2d 768, 576 N.W.2d 30 (1998), the court determined: (1) the evidence was offered for an acceptable purpose; (2) the evidence was relevant to whether Volk intended to injure Swim; and (3) the probative value of the evidence was not substantially outweighed by its prejudicial effect. The matter proceeded to jury trial on December 12, 2000.

¶ 7. At the trial, Swim testified that at approximately 1:00 a.m. on March 18, 2000, while she was living with Volk, she and Volk were intoxicated and became engaged in an argument during which Volk shoved her and she shoved him back. Volk finally pushed Swim to her knees, grabbed her neck and began choking her. Volk then "shoved his fingers down [her] throat, scratched the inside of [her] throat, pulled them back up and ripped [her] tongue on the way back out of [her] mouth." The tear to Swim's tongue occurred when Volk grabbed it and pulled it to the side. When Volk removed his fingers from Swim's mouth, she began spitting up blood. She did not attempt to leave the residence for fear that Volk would attack her again. When Volk went to bed, Swim went to the bathroom and eventually left the residence after Volk fell asleep. Swim stopped some people on the street who took her to a phone booth and she called the police.

¶ 8. The physician who treated Swim's injuries, Dr. Jim Concannon, testified that Swim presented with difficulty speaking and swallowing and had some tenderness to the external areas of the face. Dr. Concannon observed that the floor of Swim's mouth was swollen with a rip measuring approximately two inches in

length. Dr. Concannon testified that it would have been impossible for Swim's wounds to be self-inflicted.

¶ 9. Officer Eugene Heckel of the City of Kenosha Police Department testified that at approximately 1:00 a.m., he and Officer Joseph Riesselmann were flagged down by several individuals who stated that they had encountered a woman walking in the area who was bleeding. The officers located the woman who identified herself as Rhonda Swim. The officers noted that she had some blood on her clothing and she appeared to be bleeding from her mouth. Swim was upset, crying and appeared to be intoxicated. Swim informed the officers that Volk, her live-in boyfriend, had struck her. At this time, another officer, Jon Schrandt, arrived at the scene and offered to stay with Swim while Heckel and Riesselmann went to locate Volk.

¶ 10. When the officers arrived at Volk's address, they attempted to contact him by knocking on the door and calling on the telephone but were unsuccessful. Swim was brought to the residence to provide consent for the officers to enter the residence. When they did so, they located Volk hiding in the bedroom between the bed and the wall. Heckel testified that when questioned regarding Swim's injuries, Volk responded, "That's bullshit, the bitch bit her own lip." The officers handcuffed Volk, who appeared to be intoxicated, and escorted him out of the residence. Swim later sought medical attention at a hospital where she was admitted due to the seriousness of her injuries.

¶ 11. Riesselmann similarly testified as to the events leading up to Volk's arrest. Riesselmann testified that when asked about Swim's injuries, Volk responded that "that bitch bit her own lip; that bitch did everything to [herself]."

¶ 12. Volk testified as to his version of the events, which differed significantly from Swim's. Volk testified that the incident began when Swim "cracked a beer open" and it "triggered" him to approach her and push her backwards. According to Volk, Swim began hitting him. When Volk began caressing Swim's face, it was full of blood. Volk "ordered" Swim to the bathroom where she spit up "three or four ounces" of blood. Volk testified that when he observed Swim remove her blouse, she was wearing a bloody shirt underneath. According to Volk, Swim was trying to frame him.

¶ 13. In addition to Swim's testimony and that of the arresting officers, the State presented testimony from Volk's former wife, Susan Love Volk. Love testified regarding the following episodes of domestic violence committed by Volk during their relationship. On April 21, 1992, Volk had been drinking and they had an altercation regarding money and Volk slapped her across the face a couple of times. On July 3, 1992, Volk punched Love, pushed her over the back of the couch and choked her and then kicked her. Love went into the bedroom where Volk attempted to choke her again and suffocate her in blankets and pillows. On September 22, 1992, Volk "smashed" Love's head into the wall, pulled her hair, choked her and threatened her with a utility knife. On November 3, 1993, Volk punched Love, kicked her and grabbed her private parts "as hard as he could." Finally, on June 23, 1994, Love was sitting in a recliner in their residence when Volk entered and began punching her and slapped her back and forth across the face leaving a laceration and blood spurts on the window blinds.

¶ 14. Following the close of the evidence, the trial court instructed the jury that it should consider Love's testimony "only on the issues of intent and absence of

mistake or accident . . . . It is not to be used to conclude that the defendant is a bad person and for that reason is guilty of the offense charged."

¶ 15. The jury found Volk guilty of aggravated battery and disorderly conduct. Volk was sentenced as a habitual criminal under the truth-in-sentencing law. The trial court sentenced Volk to a total of twelve years' imprisonment, consisting of a six-year term of confinement followed by a six-year term of extended supervision.

¶ 16. Volk appeals. He challenges the trial court's admission of the "other acts" evidence and the extended supervision portion of his sentence under the truth-in-sentencing law.

### Other Acts Evidence

¶ 17. The admission or exclusion of evidence is committed to the sound discretion of the trial court. *See Sullivan*, 216 Wis. 2d at 780. A reviewing court will sustain a discretionary ruling if the trial court examined the relevant facts, applied the proper standard of law and, using a rational process, reached a conclusion a reasonable judge could reach. *Id.* at 780–81. In assessing the admissibility of other acts evidence, the trial court must apply the three-step analytical framework set forth in *Sullivan*.

¶ 18. First, the trial court must determine whether the evidence is offered for an acceptable purpose under Wis. Stat. § 904.04(2)—to establish motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident. *Sullivan*, 216 Wis. 2d at 772. Second, the trial court must determine

whether the evidence is relevant. In assessing relevance, the court must first determine whether the evidence "relates to a fact or proposition that is of consequence to the determination of the action," and second, determine whether the evidence has probative value such that it tends to make the consequential fact or proposition more probable or less probable than it would be without the evidence. *Id.* Finally, the trial court must determine whether the probative value of the other acts evidence is substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury, or by considerations of undue delay, waste of time or needless preparation of cumulative evidence. *Id.* at 772–73.

¶ 19. Here, Volk does not dispute that Love's testimony met the requirements of the first prong of *Sullivan*—that the evidence was offered for a permissible purpose under Wis. Stat. § 904.04. Nor does Volk dispute that the evidence met the first aspect of the second prong of *Sullivan*—that the other acts evidence was of consequence to the determination of the action. *Sullivan*, 216 Wis. 2d at 786. As indicated by the State prior to trial, Love's statements were permissible to refute Volk's statement that he did not intend any harm to Swim. The evidence was also relevant to the absence of mistake or accident in that it refuted Volk's statement that Swim injured herself. Clearly, a determination as to mistake or accident was of consequence to the determination of this action.

¶ 20. Rather, it is the second aspect of the second prong of *Sullivan*, the probative value of the evidence, that is at issue. The probative value of evidence is determined by whether the evidence has a tendency to make a consequential fact more probable or less prob-

595

able than it would be without the evidence. *See id.* Here, Volk argues that Love's testimony did not meet this requirement because the altercations described by Love did not involve the particular type of assaultive behavior alleged by Swim. Volk reasons that because Love did not testify to an incident involving Volk sticking his fingers down her throat and injuring her tongue and throat, the evidence does not tend to make a consequential fact, here whether Volk intended to harm Swim or whether Swim injured herself, more or less probable than it would have been without Love's testimony. We disagree.

¶ 21. *Sullivan* instructs:

> [T]he probative value lies in the similarity between the other act and the charged offense. The stronger the similarity between the other acts and the charged offense, the greater will be the probability that the like result was not repeated by mere chance or coincidence . . . . "[I]f a like occurrence takes place enough times, it can no longer be attributed to mere coincidence. Innocent intent will become improbable."

*Id.* at 786–87 (citation omitted). In this case, the State offered Love's testimony to refute Volk's defense that he did not intend to harm Swim and that Swim injured herself. Contrary to Volk's belief, *Sullivan* does not require the prior conduct to be exactly similar to the alleged offense. Rather, *Sullivan* looks to the strength of the similarity. *Id.* ("The stronger the similarity . . . the greater will be the probability . . . .")

¶ 22. Here, the prior acts testified to by Love were very similar to the events surrounding the charged offense and, as a result, Love's testimony had a strong tendency to make Volk's defense less probable than if she had not testified. Unlike the "other acts" evidence rejected by our supreme court in *Sullivan* which con-

sisted of one prior incident lacking unusual facts or physical contact, Love's testimony involved a series of incidents involving complex facts and physical contact similar to that alleged by Swim. *See id.* at 788–89. Specifically, the altercations described by Love were similar in that Volk had been drinking, the violence was perpetrated against a domestic partner and Volk's actions involved strikes to the head and choking. We are satisfied that Love's testimony served to make it less probable that Volk did not intend to harm Swim or that Swim injured herself. As such, the evidence satisfied the second aspect of the second prong of *Sullivan*.

¶ 23. Finally, we reject Volk's challenge to the trial court's finding that the probative value of the evidence outweighed the danger of unfair prejudice. "Unfair prejudice results when the proffered evidence has a tendency to influence the outcome by improper means or if it appeals to the jury's sympathies, arouses its sense of horror, provokes its instinct to punish or otherwise causes a jury to base its decision on something other than the established propositions in the case." *Id.* at 789–90.

¶ 24. We agree with the State that Love's testimony did not have a tendency to influence the outcome by improper means. Rather, it served to undermine Volk's credibility and refute his claim that Swim's injuries were self-inflicted or accidental. Insofar as the evidence may have appealed to the jury's sympathies or aroused its sense of horror, we note that none of the incidents described by Love were worse than the aggravated battery for which Volk was being tried. Any sense of sympathy or horror held by the jury would likely be most attributable to Swim's testimony, not Love's. Fi-

nally, we note that the trial court correctly instructed the jury as to the proper use of the other acts evidence.

■

¶ 25. We conclude that the trial court properly exercised its discretion in balancing the probative value of Love's testimony against the danger of unfair prejudice as required by WIS. STAT. § 904.03.[4] Therefore, the court did not err by admitting the evidence.

### *Application of Penalty Enhancer to Period of Extended Supervision*

¶ 26. Volk was sentenced as a habitual criminal under the truth-in-sentencing law, WIS. STAT. § 973.01.[5] On appeal, Volk challenges the extended supervision portion of the sentence.

---

[4] Because we conclude that Love's testimony was properly admitted, we need not address the State's further argument that its admission was harmless error.

[5] WISCONSIN STAT. § 973.01 provides in relevant part:

**Bifurcated sentence of imprisonment and extended supervision. (1)** BIFURCATED SENTENCE REQUIRED. Except as provided in sub. (3), whenever a court sentences a person to imprisonment in the Wisconsin state prisons for a felony committed on or after December 31, 1999, the court shall impose a bifurcated sentence that consists of a term of confinement in prison followed by a term of extended supervision under s. 302.113.

**(2)** STRUCTURE OF BIFURCATED SENTENCES. The court shall ensure that a bifurcated sentence imposed under sub. (1) complies with all of the following:

. . . .

(b) *Imprisonment portion of bifurcated sentence.* The portion of the bifurcated sentence that imposes a term of confinement in prison may not be less than one year, subject to any minimum sentence prescribed for the felony, and, except as provided in par. (c), may not exceed whichever of the following is applicable:

¶ 27. Aggravated battery is a Class D felony. WIS. STAT. § 940.19(6). A Class D felony carries a penalty of "a fine not to exceed $10,000 or imprisonment not to exceed 10 years, or both." WIS. STAT. § 939.50(3)(d). However, Volk was also convicted as a habitual criminal pursuant to WIS. STAT. § 939.62(1)(b) based upon his prior misdemeanor convictions.[6] This increased Volk's total imprisonment exposure from ten years to twelve years. *See id.* At the sentencing, Volk admitted to these prior convictions.

¶ 28. Under the "truth-in-sentencing" law, a sentence to imprisonment consists of a "term of confinement" and a "term of extended supervision." WIS. STAT. § 973.01(1). The maximum term of confinement for a

. . . .

4. For a Class D felony, the term of confinement in prison may not exceed 5 years.

. . . .

(c) *Penalty enhancement.* The maximum term of confinement in prison specified in par. (b) may be increased by any applicable penalty enhancement. If the maximum term of confinement in prison specified in par. (b) is increased under this paragraph, the total length of the bifurcated sentence that may be imposed is increased by the same amount.

[6] WISCONSIN STAT. § 939.62(1)(b) provides:

**Increased penalty for habitual criminality. (1)** If the actor is a repeater . . . the maximum term of imprisonment prescribed by law for that crime may be increased as follows:

. . . .

(b) A maximum term of more than one year but not more than 10 years may be increased by not more than 2 years if the prior convictions were for misdemeanors and by not more than 6 years if the prior conviction was for a felony.

Class D felony is five years. Sec. 973.01(2)(b)4. The remainder of the sentence consists of extended supervision, which "may not be less than 25% of the length of the term of confinement in prison imposed under par. (b)." Sec. 973.01(2)(d).

¶ 29. Applying the enhanced penalty provisions, the trial court sentenced Volk to the maximum twelve years' imprisonment. Applying the bifurcated sentence provisions of Wis. Stat. § 973.01(1), the court ordered a six-year term of confinement followed by a six-year term of extended supervision.

¶ 30. Represented by counsel for the first time, Volk filed a postconviction motion challenging the legality of the enhanced term of extended supervision. The motion contended, "This additional penalty, if imposed, is to be applied to the term of confinement. Wis. Stat. § 973.01(2)(c)." As relief, Volk sought to reduce the six-year term of extended supervision to five years.[7]

¶ 31. On November 23, 2001, the trial court issued a written decision rejecting Volk's argument that the penalty enhancer can only be used to increase a maximum term of confinement. The court said that Volk's interpretation was unreasonable because, in cer-

---

[7] Following the hearing on his postconviction motion, Volk wrote a series of letters to the trial court. In the first letter, he stated that he was withdrawing his challenge to the term of extended supervision. In his second letter, he stated that he was reinstating that challenge. However, in this same letter, Volk conceded that the trial court could enhance a term of extended supervision, but if it did so, the court was obligated to reduce the term of confinement to less than the maximum of five years. We confess that we do not entirely understand Volk's reasoning as expressed in this second letter. Regardless, on appeal, Volk returns to his original argument that a term of extended supervision is not subject to penalty enhancement.

tain situations, it would allow for a greater term of extended supervision in a nonenhancement case than in an enhancement case. As a result, the court concluded that "the only way that [WIS. STAT. § 973.01(2)(c)] makes sense is to read it in the context of potential sentences and not in terms of actual sentences imposed."

¶ 32. As a threshold matter, we address the State's contention that we need not address whether a penalty enhancer may be applied to a term of extended supervision. The State argues that the trial court's sentence can be construed as imposing the penalty enhancer only to the term of confinement. Under the State's reasoning, the trial court imposed a four-year term of confinement and then enhanced that confinement by two additional years, producing the six-year term of confinement.

¶ 33. While we understand the State's mathematics, it is not supported by the record in this case. We have reviewed the trial court's statements at sentencing and its postconviction decision and order. We find no indication in these materials that the trial court limited the application of the penalty enhancer to only the term of confinement. To the contrary, when Volk complained that the term of extended supervision had been enhanced, the trial court explained in some detail why it believed a sentencing court could enhance a term of extended supervision. In so doing, the court even pointed to what it saw as the unreasonable results produced by Volk's argument. In short, the State's interpretation of the sentence is made out of whole cloth and is not supported by the record. Therefore, we proceed to the merits of Volk's argument.

### Wisconsin Stat. § 973.01(2)(c) is Unambiguous

¶ 34. The interpretation and application of a statute present questions of law which we review de novo. *State v. Murdock*, 2000 WI App 170, ¶ 18, 238 Wis. 2d 301, 617 N.W.2d 175. "Statutory interpretation begins with the language of the statute, and if the language is plain and unambiguous, we apply it without further inquiry into extrinsic interpretive aids." *State v. T.J. Int'l, Inc.*, 2001 WI 76, ¶ 20, 244 Wis. 2d 481, 628 N.W.2d 774. "If statutory language is ambiguous, that is, 'if reasonable minds could differ as to its meaning,' we look to the scope, history, context, subject matter, and purpose of the statute to help establish its proper interpretation." *Id.* (citations omitted). The purpose of statutory interpretation is to discern the intent of the legislature, and the primary resource is the language of the statute itself. *State v. Eichman*, 155 Wis. 2d 552, 560, 456 N.W.2d 143 (1990).

¶ 35. We agree with Volk's argument that a penalty enhancer cannot be applied to the term of extended supervision.[8] The opening subsection of the "truth-in-sentencing" statute, Wis. Stat. § 973.01(1), sets out the "confinement" and "extended supervision" components of a sentence of imprisonment for a felony committed on or after December 31, 1999. Paragraph (2)(a) provides that the total length of a bifurcated sentence may

---

[8] We note that in so arguing, Volk cites to the court of appeals opinion, *State v. Jones*, 2002 WI App 29, 250 Wis. 2d 77, 640 N.W.2d 151, which was subsequently withdrawn by order of the supreme court, *see* 2002 WI 53, 252 Wis. 2d 592, 645 N.W.2d 610. Our opinion on this issue tracks, in part, some of the language and reasoning of our colleagues' opinion in *Jones*.

not exceed the maximum period of imprisonment for the felony. Paragraph (2)(b) then sets out the maximum periods of confinement for the various classes of felonies "except as provided in par (c)," which address penalty enhancement in a truth-in-sentencing case. Paragraph (c) reads:

> *Penalty enhancement.* The *maximum term of confinement* in prison specified in par. (b) may be increased by any applicable penalty enhancement. If the maximum term of confinement in prison specified in par. (b) is increased under this paragraph, the total length of the bifurcated sentence that may be imposed is increased by the same amount. (Emphasis added.)

¶ 36. The first sentence of this paragraph clearly and unambiguously authorizes the sentencing court to apply the penalty enhancer to the term of confinement. However, the statute confers no such authorization to the term of extended supervision. This alone strongly suggests that Wis. Stat. § 973.01(2)(c) does not authorize a sentencing court to impose any portion of a penalty enhancer as extended supervision. From this, it logically follows, as set out in the second sentence of the paragraph, that when the penalty enhancer is applied to a term of confinement, the total length of the bifurcated sentence is "increased by the same amount." *Id.*

¶ 37. Certain principles of statutory construction support our interpretation. When the legislature has specified one exception to a general rule, we presume that the legislature intended to exclude other exceptions. *See State v. Cetnarowski*, 166 Wis. 2d 700, 710, 480 N.W.2d 790 (Ct. App. 1992). Here, Wis. Stat. § 973.01(2)(b) sets out the general rule prescribing the maximum periods of confinement for the various

classes of felonies. However, this recital concludes with the important qualifier, "*except as provided in par. (c).*" (Emphasis added). As noted, para. (c) is the penalty enhancer provision of the truth-in-sentencing law. While this paragraph permits penalty enhancement of a term of confinement, it says nothing about enhancement of a term of extended supervision. We deem this omission significant.

¶ 38. Despite this language, the State persists that a penalty enhancer can nonetheless be applied to a term of extended supervision. If that truly was the legislative intent, the legislature has kept it well hidden. "The plain, obvious, and rational meaning of a statute is always to be preferred to any curious, narrow, or hidden sense." *State Bank of Drummond v. Nuesse*, 13 Wis. 2d 74, 78, 108 N.W.2d 283 (1961).

¶ 39. Lest there be any doubt about the correctness of our interpretation, the legislative history of the truth-in-sentencing law resolves the question. "The well-established tenets of the plain meaning rule preclude courts from resorting to legislative history to uncover ambiguities in a statute otherwise clear on its face." *State ex rel. Cramer v. Court of Appeals*, 2000 WI 86, ¶ 37, 236 Wis. 2d 473, 613 N.W.2d 591. "While legislative history cannot be used to demonstrate that a statute unambiguous on its face is ambiguous, there is no converse rule that statutory history cannot be used to reinforce and demonstrate that a statute plain on its face, when viewed historically, is indeed unambiguous." *State v. Martin*, 162 Wis. 2d 883, 897 n.5, 470 N.W.2d 900 (1991). Therefore, on occasion, this court consults legislative history and other sources "to show how that history supports our interpretation of a statute other-

wise clear on its face." *Seider v. O'Connell*, 2000 WI 76, ¶ 52, 236 Wis. 2d 211, 612 N.W.2d 659.

¶ 40. 1997 Wis. Act 283, which established the truth-in-sentencing legislation, also created the Criminal Penalties Study Committee. 1997 Wis. Act 283, § 419. The Criminal Penalties Study Committee is "an 18–person bipartisan and diverse group of judges, prosecutors, criminal defense lawyers, legislators, academics, corrections and law enforcement officials, and members of the public." Michael B. Brennan & Donald V. Latorraca, *Truth-in-Sentencing,* WIS. LAW., May 2000, at 14, 58. The Committee was charged with the responsibility of making recommendations regarding the truth-in-sentencing legislation and drafting proposed legislation necessary to implement the recommendations. State of Wisconsin Criminal Penalties Study Committee, Final Report ("Report"), August 31, 1999, at 6.[9]

¶ 41. On August 31, 1999, the Committee issued its report. *Id.* The Committee made two recommendations regarding penalty enhancers under WIS. STAT. § 973.01(2)(c). First:

> If pleaded and proved, these enhancers increase the maximum term of confinement for the underlying crime and increase the overall maximum term of imprisonment as well. They do not lengthen the maximum term of extended supervision for the underlying crime . . . . [S]uppose that one has been convicted of the crime of assault by a prisoner while armed with a dangerous weapon . . . . The dangerous weapon penalty enhancer adds 5 years to the maximum term of confinement for the underlying assault charge while like-

---

[9] This report can be accessed at www.doa.state.wi.us/criminal_penalities.pdf. We note the misspelling of penalties as "penalities" on the web page address.

wise increasing the overall maximum term of imprisonment by the same amount. It does not increase the maximum term of extended supervision.

Report at 60 (footnotes omitted). And second:

> The extended supervision caps ... would apply regardless of whether the penalties for the crime of conviction have been increased because the actor is a habitual criminal and/or because one of the penalty enhancers ... has been pleaded and proved. In these instances the maximum term of confinement increases according to schedules in the Statutes and the overall maximum term of imprisonment increases by a like amount. The maximum term of extended supervision, however, does not increase.
>
> Given the purposes of extended supervision, the Committee believes this amount is sufficient. It does not recommend adjusting extended supervision caps when penalty enhancers (including habitual criminality) are present in the case.

Report at 20 (footnotes omitted).

¶ 42. The Criminal Penalties Study Committee's Final Report clearly supports our interpretation of WIS. STAT. § 973.01(2)(c). "By confirming that our understanding of [the] law conforms with [the Committee's interpretation], we better fulfill our duty of effectuating the legislature's intent." *Seider*, 2000 WI 76 at ¶ 52.[10]

¶ 43. The State also argues that limiting a penalty enhancer to just the term of confinement produces an unreasonable result because it necessarily limits the trial court's discretion in determining the appropriate duration of the term of extended supervision. While our interpretation might constrain a sentencing court's

---

[10] Unfortunately, neither party cited this legislative history to the trial court.

exercise of discretion in a given case, we do not agree our holding necessarily produces an unreasonable or absurd result. The legislative history we have previously cited establishes that the legislature wanted a habitual criminal's term of confinement enhanced—not the term of extended supervision. This decision makes eminent sense since it confers greater protection to the public from those who have already demonstrated a propensity to engage in criminal behavior.

¶ 44. Even assuming for the sake of argument that the State's interpretation of the statute is more reasonable than ours, it does not necessarily follow that our interpretation is thereby rendered unreasonable or absurd. In *State v. Lindsey A.F.*, 2002 WI App. 223, Nos. 01–0081; 01–0082, the court of appeals addressed competing interpretations of the deferred prosecution provisions of WIS. STAT. § 938.21(7). *Lindsey*, 2002 WI App 223 at ¶ 1. Adhering to the plain language of the statute, the court of appeals acknowledged that its interpretation could produce "dismissals [of delinquency petitions] based on inadequate information" and created a "cumbersome" procedure. *Id.* at ¶ 24. Nonetheless, the court held that this result was not absurd. *Id.* The same logic applies here.

¶ 45. Even though a trial court has wide discretion in the matter of sentencing, the legislature is the ultimate authority that sets the maximum, and sometimes minimum, terms of imprisonment and confinement. The State's argument is better directed to the legislature than to this court.

### *Resentencing*

¶ 46. Having concluded that the trial court erred by enhancing Volk's term of extended supervision, we

607

next consider the remedy. At first blush, this case appears to fall under WIS. STAT. § 973.13, which states:

> In any case where the court imposes a maximum penalty in excess of that authorized by law, such excess shall be void and the sentence shall be valid only to the extent of the maximum term authorized by statute and shall stand commuted without further proceedings.

If this statute applies, we would simply confirm the six-year term of confinement, and commute the six-year term of extended supervision to five years, thereby putting the matter to rest without further proceedings.

■■■

¶ 47. However, under closer scrutiny, we conclude that WIS. STAT. § 973.13 does not apply in this case. In *State v. Holloway*, 202 Wis. 2d 694, 551 N.W.2d 841 (Ct. App. 1996), the trial court originally sentenced the defendant to concurrent sentences as a repeater. *Id.* at 696. Thereafter, the court commuted the sentences to the maximums permitted for the underlying offenses because the repeater allegations were not properly proven. *Id.* at 696–97. However, the court ordered that the new commuted sentences be consecutive rather than concurrent. *Id.* at 697. On appeal, the defendant challenged this change in the structure of the sentence. We held that the change was proper because "the premise and goals of the prior sentence have been frustrated." *Id.* at 700. In considering § 973.13, we explained:

> On the issue before us, § 973.13, Stats., is more remarkable for what it does not say than what it does. The statute clearly invalidates the excess portion of an enhanced repeater sentence which is not properly proven [and in excess of the maximum penalty] . . . . However, the statute does not otherwise address other

components or conditions of the sentence which do not directly bear upon the duration of the term imposed.

. . . .

Sentences are to be individualized to meet the facts of the particular case and the characteristics of the individual defendant . . . . We should not restrict the discretionary authority of a court at resentencing when the underlying premise for an original sentence no longer exists. Resentencing is generally the proper method of correcting a sentencing error.

*Holloway*, 202 Wis. 2d at 698, 699–700 (citations omitted).

¶ 48. As we have explained, a sentence under the truth-in-sentencing law consists of a term of confinement and a term of extended supervision. These two components form a symbiotic relationship with the length of one necessarily influencing the length of the other and the overall length of the bifurcated sentence. Although the sentencing court imposes two discrete terms—one of confinement and one of extended supervision—it remains that the end product is but a single sentence. When a crucial component of such a sentence is overturned, it is proper and necessary for the sentencing court to revisit the entire question. If we held otherwise and simply confirmed the term of confinement and commuted the extended supervision to five years pursuant to Wis. Stat. § 973.13, we would produce a sentence based on mathematics, rather than an individualized sentence based on "the facts of the particular case and the characteristics of the individual defendant." *Holloway*, 202 Wis. 2d at 699–700.

¶ 49. We therefore reverse the postconviction order rejecting Volk's challenge to the sentence for aggravated battery and remand the matter to the trial court for resentencing consistent with the analysis of the law set forth in this opinion.

## CONCLUSION

¶ 50. We affirm Volk's conviction for aggravated battery. We reverse the sentencing portion of the judgment of conviction and the order denying postconviction relief. We remand for resentencing on the aggravated battery conviction.

*By the Court.*—Judgment affirmed in part and reversed in part; order reversed and cause remanded with directions.