COURT OF APPEALS
DECISION
DATED AND FILED

July 30, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2020AP62-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2018CF721

IN COURT OF APPEALS
DISTRICT II

---

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

CHRISTOPHER W. LEBLANC,

DEFENDANT-APPELLANT.

---

APPEAL from a judgment and an order of the circuit court for Kenosha County: JASON A. ROSSELL, Judge. *Judgment affirmed in part and reversed in part; order reversed and cause remanded with directions.*

Before Reilly, P.J., Gundrum and Davis, JJ.

¶1    REILLY, P.J.  A sentence under truth-in-sentencing (TIS)[1] is a single sentence made up of two components: initial confinement (IC) and extended supervision (ES).  *State v. Volk*, 2002 WI App 274, ¶28, 258 Wis. 2d 584, 654 N.W.2d 24.  We conclude that if a sentencing court imposes an excessive term of IC or ES, a defendant is entitled to a new sentencing hearing as a matter of law *unless* the nonexcessive term of IC or ES is at the maximum, in which case the court has the discretion to commute the excessive component to the maximum term pursuant to WIS. STAT. § 973.13 (2019-20)[2] without holding a new sentencing hearing.

¶2    Christopher W. LeBlanc appeals from a judgment convicting him of using a computer to facilitate a child sex crime, pursuant to WIS. STAT. § 948.075(1r), and from an order denying his postconviction motion for resentencing.  LeBlanc raises two issues on appeal:  (1) is a defendant entitled to resentencing when an excessive sentence has been imposed and (2) does a court erroneously exercise its sentencing discretion if it relies upon a defendant's belief that consensual extramarital sex is not sinful as a punitive sentencing factor?  LeBlanc is entitled to a new sentencing hearing, as his ES term was excessive but his IC term was less than the maximum allowed by law.  As we are reversing on

---

[1]  "Wisconsin adopted truth-in-sentencing legislation in two phases.  The first phase, TIS-I, was enacted in June 1998 and applied to offenses committed on or after December 31, 1999.  The second phase, TIS-II, was enacted in July 2002 and became effective February 1, 2003."  *State v. Gallion*, 2004 WI 42, ¶7 n.3, 270 Wis. 2d 535, 678 N.W.2d 197 (citing 1997 Wis. Act 283; 2001 Wis. Act 109).

[2]  All references to the Wisconsin Statutes are to the 2019-20 version.

LeBlanc's first issue and remanding for resentencing, we need not decide if the court actually relied on an improper factor.[3]

*Facts*

¶3    In 2018, LeBlanc engaged in sexting with a 15-year-old girl and arranged a meeting with the child with the intent of engaging in sexual activity. Police fortunately intercepted the meeting and arrested LeBlanc. LeBlanc pled guilty to one count of using a computer to facilitate a child sex crime,[4] in violation of WIS. STAT. § 948.075(1r), a Class C Felony, which subjected LeBlanc to a forty-year sentence with a maximum of twenty-five years' IC and fifteen years' ES. *See* WIS. STAT. § 973.01(2)(b)3., (2)(d)2. The court ordered a pre-sentence investigation (PSI) for purposes of sentencing.

¶4    The PSI author reported that LeBlanc's "lifestyle" as a truck driver included using "hook up applications such as 'Grindr,' 'Tinder,' and 'Plenty of Fish' to engage in sexual encounters with random individuals while staying in hotels" around the country. The PSI writer opined that LeBlanc's "occupation and lifestyle subjects the public to an extreme amount of unnecessary risk in multiple state jurisdictions." The PSI recommended six to eight years' IC followed by five to six years' ES. The State, pursuant to its plea agreement, recommended ten

---

[3] We note that LeBlanc does not challenge his conviction on appeal. Accordingly, we affirm LeBlanc's conviction. We reverse only the sentencing portion of the judgment of conviction and the court's order denying LeBlanc's motion for postconviction relief and remand for resentencing.

[4] LeBlanc was originally charged with one count each of using a computer to facilitate a child sex crime, exposing a child to harmful material, sexual exploitation of a child, possession of child pornography, solicitation, and misdemeanor bail jumping. The solicitation charge was later dropped by the State. In exchange for LeBlanc's plea, the State agreed to dismiss the remaining charges and dismiss but read in charges in a different misdemeanor case.

years' IC and made no recommendation as to ES. Defense counsel recommended the mandatory minimum of five years' IC and made no recommendation as to ES.

¶5    The circuit court imposed fifteen years' IC and twenty years' ES. The court's sentence was excessive, as the ES component exceeded the maximum the court could impose by five years (the IC component was ten years less than what the court could have imposed). *See* WIS. STAT. § 973.01(2)(d)2. In its sentencing comments, the court indicated that it did not "want to make [a] comment … about a religious belief" but noted LeBlanc's "attitude towards sex," which included his belief that it was not "sinful" and "you [do not] have to be married to have sex." The court agreed with the PSI writer that LeBlanc's "occupation and lifestyle," including his "attitude towards sex," "subjects the public to an extreme amount of unnecessary risk in multiple state jurisdictions." The court went on to say that "[b]ecause of that risk, to be blunt, the [c]ourt's sentence is primarily to protect the public."

¶6    A few months after sentencing, the Department of Corrections wrote the circuit court, indicating that LeBlanc's sentence was excessive, as the ES term was five years in excess of the statutory maximum. The court held a brief hearing and, without objection from LeBlanc or the State, ordered that a "new [judgment of conviction] be created indicating the maximum term of Extended Supervision [is] 15 years, not 20."

¶7    LeBlanc filed a postconviction motion, asserting that resentencing rather than commutation was the correct remedy for his excessive sentence and that the court erred when it relied at sentencing on his attitude towards extramarital consensual sex. The court denied both claims. LeBlanc appeals.

*Resentencing or Commutation*

¶8    At first blush, commutation appears to apply as WIS. STAT. § 973.13 provides: "In any case where the court imposes a maximum penalty in excess of that authorized by law, such excess shall be void and the sentence shall be valid only to the extent of the maximum term authorized by statute and shall stand commuted without further proceedings." LeBlanc argues, however, that § 973.13 "does not provide a remedy" in this case and that he is entitled to resentencing rather than commutation. "Sentencing is a matter committed to the [circuit] court's discretion." *State v. Holloway*, 202 Wis. 2d 694, 697, 551 N.W.2d 841 (Ct. App. 1996). Whether the court correctly interpreted and applied § 973.13 is a question that we review de novo. *Id.*

¶9    We begin by observing that a TIS sentence is but a single sentence made up of two components—IC and ES—which "form a symbiotic relationship with the length of one necessarily influencing the length of the other and the overall length of the bifurcated sentence." *See State v. Volk*, 2002 WI App 274, ¶48, 258 Wis. 2d 584, 654 N.W.2d 24. Neither the IC nor the ES component is a "sentence" of the court; only the two components together make up the sentence of the court. *Id.*

¶10    As an error correcting court, we follow legal precedent when it exists. In *Volk*, we addressed whether resentencing or commutation is the required remedy when an excessive term of ES has been imposed (and the IC is less than the maximum term). *Id.*, ¶¶26-31, 46-49. We explained that WIS. STAT.

5

§ 973.13 (1999-2000) "[did] not apply," as resentencing was the "proper and necessary" remedy.[5] *Volk*, 258 Wis. 2d 584, ¶¶47-48. We explained:

> [A] sentence under the truth-in-sentencing law consists of a term of confinement and a term of extended supervision. These two components form a symbiotic relationship with the length of one necessarily influencing the length of the other and the overall length of the bifurcated sentence. Although the sentencing court imposes two discrete terms—one of confinement and one of extended supervision—it remains that the end product is but a single sentence. When a crucial component of such a sentence is overturned, it is proper and necessary for the sentencing court to revisit the entire question. If we held otherwise and simply confirmed the term of confinement and commuted the extended supervision to five years pursuant to WIS. STAT. § 973.13, we would produce a sentence based on mathematics, rather than an individualized sentence based on "the facts of the particular case and the characteristics of the individual defendant." *Holloway*, 202 Wis. 2d at 699-700.

*Volk*, 258 Wis. 2d 584, ¶48; *see also* **State v. Kleven**, 2005 WI App 66, ¶¶19-31, 280 Wis. 2d 468, 696 N.W.2d 226 (finding, based on *Volk*, that resentencing was required where the circuit court imposed too short a term of ES).

¶11    As in *Volk*, if we force commutation upon a defendant who moves for resentencing, "we would produce a sentence based solely on mathematics, rather than an individualized sentence based on 'the facts of the particular case and the characteristics of the individual defendant.'" *Volk*, 258 Wis. 2d 584, ¶48 (quoting *Holloway*, 202 Wis. 2d at 699-700). *Volk* adopted *Holloway*'s reasoning that "[s]entences are to be individualized to meet the facts of the particular case and the characteristics of the individual defendant…. We should not restrict the

---

[5] We recognize that *Volk* was decided under the previous statutory sentencing scheme known as "TIS-I," *see* **State v. Volk**, 2002 WI App 274, ¶1 n.2, 258 Wis. 2d 584, 654 N.W.2d 24, but that fact has no bearing on the issue presented in this case as WIS. STAT. § 973.13 has not been amended.

discretionary authority of a court at resentencing when the underlying premise for an original sentence no longer exists." *Volk*, 258 Wis. 2d 584, ¶47 (quoting *Holloway*, 202 Wis. 2d at 699-700). As we explained, "[r]esentencing is generally the proper method of correcting a sentencing error." *Id.* (quoting *Holloway*, 202 Wis. 2d at 700).

¶12    The State argues that WIS. STAT. § 973.13 and *Holloway* "command[]" a circuit court to commute an excessive sentence and that resentencing is optional. *See Holloway*, 202 Wis. 2d at 698. We agree that where an excessive sentence is imposed, the court has no discretion but to commute the sentence to the maximum penalty "authorized by law." Sec. 973.13. We disagree with the State's premise that a court has the discretion to choose between commutation and resentencing where the court did not impose a maximum term for either the IC or ES component. In other words, where the defendant received an excessive sentence and both the IC and ES components were at or exceeding the maximum—a "maximum case"—the court has the discretion to commute the excessive component to the statutory maximum term pursuant to § 973.13. Where the nonexcessive term of IC or ES is not at the maximum, however, a defendant is entitled to a new sentencing hearing as a matter of law.

¶13    Under this circumstance, where the court intentionally struck a balance between the IC and ES components that was less than the maximum, commutation "would produce a sentence based on mathematics" and would alter the structure and "symbiotic relationship" of the bifurcated sentence. *See Volk*, 258 Wis. 2d 584, ¶48. "When a crucial component of such a sentence is overturned, it is proper and necessary for the sentencing court to revisit the entire question." *Id.* Where there is an objection to commutation under the scenario

presented by LeBlanc, the court, upon motion of the defendant, must resentence the defendant.[6] Accordingly, we reverse and remand for resentencing.

*Sentencing Discretion*

¶14 LeBlanc also argues that the sentencing court erred by relying on an improper factor—LeBlanc's "belief that extramarital sex is not sinful"—when concluding that he was a risk to the public. The State counters that LeBlanc has not established that the court relied on his religious views, and even if the court did, it was a proper sentencing factor, as the court could have found a "reliable nexus" between "LeBlanc's permissive views on extramarital sex" that "could reasonably" "ma[ke] him more likely to engage in extramarital sex with a child."

¶15 As we are remanding for resentencing, we need not decide whether the court actually relied upon an improper factor, as LeBlanc will be resentenced regardless. Accordingly, we will only set forth the appropriate standards that apply at all sentencings. On one hand, a sentencing court may look at factors virtually unlimited in scope, *see **Nichols v. United States**,* 511 U.S. 738, 747 (1994), while on the other hand, a court errs when it "actually relies on clearly irrelevant or improper factors," ***State v. Alexander***, 2015 WI 6, ¶17, 360 Wis. 2d

---

[6] As the State correctly points out, LeBlanc could be subjecting himself to a sentence that has a longer IC time as the maximum period of IC is twenty-five years. *See **State v. Holloway***, 202 Wis. 2d 694, 701, 697, 551 N.W.2d 841 (Ct. App. 1996). We agree with the State's observation that "some defendants might prefer only commutation instead of risking an adverse outcome at a resentencing hearing."

292, 858 N.W.2d 662 (citation omitted).[7]  A defendant who challenges the court's sentencing decision has the burden to prove that the factor was both improper and that the court actually relied on it.  *State v. Williams*, 2018 WI 59, ¶45, 381 Wis. 2d 661, 912 N.W.2d 373.

¶16  In this case, the sentencing court, in its remarks, appropriately addressed the *State v. Gallion*, 2004 WI 42, 270 Wis. 2d 535, 678 N.W.2d 197, sentencing factors.  The court noted that the gravity of the offense was significant considering that "[w]e charge the adults in this community to not engage in behaviors that harm children," and had the police not intervened, "[w]e'd be here on a First-degree Sexual Assault of a Child."  On the matters of LeBlanc's character and the need to protect the public, the court stated:

---

[7] In *State v. Williams*, 2018 WI 59, ¶46, 381 Wis. 2d 661, 912 N.W.2d 373 (citations omitted), our supreme court explained:

> There are three main factors circuit courts must consider in determining a defendant's sentence:  (1) the gravity of the offense; (2) the character of the defendant; and (3) the need to protect the public.  The circuit court may also consider secondary factors, including:
>
> (1) Past record of criminal offense; (2) history of undesirable behavior pattern; (3) the defendant's personality, character and social traits; (4) result of presentence investigation; (5) vicious or aggravated nature of the crime; (6) degree of the defendant's culpability; (7) defendant's demeanor at trial; (8) defendant's age, educational background and employment record; (9) defendant's remorse, repentance and cooperativeness; (10) defendant's need for close rehabilitative control; (11) the rights of the public; and (12) the length of pretrial detention.
>
> When imposing sentence, a circuit court cannot rely on inaccurate information, race or national origin, gender, alleged extra-jurisdictional offenses, or the defendant's or victim's religion.

> And the difficulty that I have in this, and I don't want to make comment that—about a religious belief, but I think the PSI writer kind of, correctly, when considering your character—I mean, you don't have a prior record. You did enter a plea. You didn't require the State to bring this to trial, or for the child to testify, and I recognize that. And I do recognize that as, in a way, taking responsibility, but the one thing that I noticed was, and this is page 14, when asked to explain his attitude towards sex [LeBlanc] said, "I don't think it's sinful. I don't believe that you have to be married to have sex." He talks about some of the behaviors that he engaged in during—when you were married.

> I think the probation agent, I think really hits the proverbial nail on the head when she says at the bottom of page 21,… "This writer believes that this occupation and lifestyle,"—in lifestyle she's referring to [LeBlanc's] attitudes towards sex and prior situations, "that this occupation and lifestyle subjects the public to an extreme amount of unnecessary risk in multiple state jurisdictions."

The court then indicated that its "sentence is primarily to protect the public."

¶17    At the hearing on the postconviction motion for resentencing, the court explained that

> its comments [were] not adopting a religious standard or moral[,] although our laws do adopt morals.

> We say it's not okay to have sex with children. We say it's not okay to have sex with animals. We say it's not okay to have sex with non-consenting adults. We say it's not okay to commit adultery.

The court reiterated that adultery is a crime in Wisconsin. According to the court, "[w]hat [it] was expressing is the fact that [LeBlanc] was engaged in behaviors that pushed the norms of sexuality" but "was in no way, shape, or form passing judgment on him in a religious sense."

¶18    The State does not deny that the sentencing court relied heavily on LeBlanc's sexual history and beliefs. If the court was basing its sentencing decision on LeBlanc's religious beliefs as they relate to extramarital sex and/or

10

"sin" this was improper. *See **State v. Ninham***, 2011 WI 33, ¶96, 333 Wis. 2d 335, 797 N.W.2d 451 ("[A] circuit court may not base its sentencing decision upon the defendant's or the victim's religion."); ***State v. Fuerst***, 181 Wis. 2d 903, 911-12, 512 N.W.2d 243 (Ct. App. 1994).[8] We would also note that to the extent the sentencing court was basing its decision on LeBlanc's permissive attitudes towards sexual practices, including his statement to the PSI writer that "I don't believe that you have to be married to have sex"—a statement the sentencing court expressly made note of at sentencing—this too would be improper. *See **Lawrence v. Texas***, 539 U.S. 558, 577-78 (2003).[9] As we noted previously, we need not determine whether the court actually relied on an improper factor as we are

---

[8] We note that in ***State v. Fuerst***, 181 Wis. 2d 903, 913, 512 N.W.2d 243 (Ct. App. 1994), this court explained that

> a sentencing court may consider a defendant's religious beliefs and practices only if a reliable nexus exists between the defendant's criminal conduct and the defendant's religious beliefs and practices. For example, it would be permissible for a court sentencing a defendant convicted of drug offenses to consider the defendant's religious practices as a factor at sentencing if those religious practices involve the use of illegal drugs.

[9] We note that the circuit court, at the postconviction hearing, focused on the fact that adultery is a crime under Wisconsin law. *See* WIS. STAT. § 944.16; *see also **State v. Richard G.B.***, 2003 WI App 13, ¶16, 259 Wis. 2d 730, 656 N.W.2d 469. *But see* WIS. STAT. § 944.01 ("Although the state does not regulate the private sexual activity of consenting adults, the state does not condone or encourage any form of sexual conduct outside the institution of marriage."); ***Richard G.B.***, 259 Wis. 2d 730, ¶16 ("It may be that adultery is no longer prosecuted as a crime, and that many people no longer view adultery as deserving of criminal punishment."). While adultery may technically still be a crime in this state, that fact does not bear on LeBlanc's permissive views on adult consensual nonmarital sex as they relate to the sentencing objectives for an unrelated crime, particularly his purported dangerousness to the public. We do not view the circuit court as having imposed sentence on the basis of LeBlanc's commission of adultery in and of itself, and we do not deem it necessary that we reach the issue of whether or under what circumstances adulterous activity might veer into a proper sentencing objective.

remanding for a new sentencing hearing regardless. We simply offer these observations to provide guidance following remand.

*By the Court.*—Judgment affirmed in part and reversed in part; order reversed and cause remanded with directions.

Not recommended for publication in the official reports.

No.    2020AP62(C)


¶19    GUNDRUM, J. (*concurring*).  I write separately because I decline to join in paragraphs fourteen through eighteen of the Majority decision.

¶20    LeBlanc was convicted of attempting to set up a sexual encounter with a fifteen-year-old girl from his daughter's school.  Prior to the attempted encounter, they had each sent nude photos of themselves and engaged in conversations, through phone applications such as "Grindr," that were "very sexual in nature."  LeBlanc told the victim "that he would take her virginity."

¶21    The Majority questions the appropriateness of the circuit court's reference to "adultery" and its observation that LeBlanc "was engaged in behaviors that pushed the norms of sexuality."  Majority, ¶¶17-18.  The Majority states that it would be "improper" if the circuit court considered in its sentencing decision "LeBlanc's permissive attitudes towards sexual practices."  Majority, ¶18.  I disagree; here there is a clear and direct connection between LeBlanc's "attitudes" and "behaviors" and protection of the public, as demonstrated by LeBlanc's actions in this case.

¶22    Notably, the circuit court was not talking about a situation in which a married person engages in a drunken, one-night stand that he or she regrets, nor was it referencing adultery in the context of a long-term relationship that began while one of the persons in that relationship was still married to another.  Also significant, this was not a situation where a defendant was being sentenced for a crime unrelated to sexual conduct, such as theft, and the court sentenced him or her more harshly because the court was aware the defendant had committed

adultery[1] or "engaged in behaviors that pushed the norms of sexuality" and, due to that awareness, the court simply felt the defendant had poor character.  Rather, the court's references were made in the context of discussing LeBlanc's sexual practices that were highlighted as a relevant public safety concern by the PSI writer:

> The defendant told this writer that he would often use hook up applications such as "Grinder," "Tinder," and "Plenty of Fish" to engage in sexual encounters with random individuals while staying in hotels due to his CDL truck driving route.  This writer believes that this occupation and lifestyle subjects the public to an extreme amount of unnecessary risk in multiple state jurisdictions.

Also referred to by the court was the PSI writer's note:

> The defendant reported that he has engaged in phone sex, use of bondage/restraints, partner swapping, internet sex, viewing of adult pornography, three-way sex, group sex, sex in public, mutual masturbation, and oral and anal sex.

¶23     LeBlanc also admitted to "sexually fantasiz[ing]" about these same activities as well as fantasizing about "secretly viewing other people."  According to the complaint, which LeBlanc agreed could be used to provide a factual basis for his conviction, LeBlanc appears to have acted on the latter fantasy in this case, at least to some degree, as the fifteen-year-old victim told police that when she and LeBlanc were conversing through phone applications, such as "Grindr," she found it "strange" that LeBlanc would tell her things like "her full first and last name (which she had not revealed to him) … that he knew that she rides on the front of

---

[1] In *State v. Yakes*, 226 Wis. 2d 425, 434-35, 595 N.W.2d 108 (Ct. App. 1999), we concluded that the sentencing court's consideration of Yakes' adulterous activity and the fact that "adultery" is still a crime in Wisconsin, like the similar considerations of the sentencing court in this case, was an "appropriate" consideration.  This is still the law.

2

the bus for school, that she wears headphones and that she often wears leather." The complaint further shows that LeBlanc did not just limit his use of random "hook-up" applications such as "Grindr" to connecting with adults for sexual liaisons, but that he also used that same application to push the envelope further and connect with the fifteen-year-old victim in this case for the same purpose.

¶24 Here, the circuit court sentenced LeBlanc more harshly to protect the public from someone whose sexual "attitudes" and "behaviors" are such that they contributed to him apparently "secretly viewing" this teenage girl, using a "hook-up" application to connect with her and engaging with her online in a sexual manner, and then attempting to set up a sexual encounter with her. The court was commenting on the clear and direct nexus between LeBlanc's sexual "attitudes" and "behaviors" and the danger these posed to the public in the future, as proven by LeBlanc's actions related to this case.[2] The court found that LeBlanc's

---

[2] As the Majority appears to recognize, but not follow, *see* Majority at ¶18 & n.8, in *State v. Fuerst*, 181 Wis. 2d 903, 512 N.W.2d 243 (Ct. App. 1994), we held that "a sentencing court *may consider* a defendant's religious beliefs and practices ... if a reliable nexus exists between the defendant's criminal conduct and the defendant's religious beliefs and practices." *Id.* at 913 (emphasis added). This is still the law. *See State v. Whitaker*, 2021 WI App 17, ¶21, 396 Wis. 2d 557, 957 N.W.2d 561, *review granted*, No. 2020AP29-CR (June 16, 2021). Here, it is questionable whether the circuit court was relying upon LeBlanc's "*religious* beliefs and practices" in the first place. *Fuerst*, 181 Wis. 2d at 913 (emphasis added). But even if it was, there is unquestionably a "reliable nexus" between his beliefs and practices and his criminal conduct in this case. Moreover, the Majority has cited to no precedent holding that a defendant's "permissive attitudes towards sexual practices," *see* Majority at ¶18, is an "improper" sentencing consideration where a defendant is being sentenced for a sexual offense related to a child, as in this case. *Lawrence v. Texas*, 539 U.S. 558, 577-78 (2003), *see* Majority at ¶18, does not so hold, and I think it unlikely that many, if any, decisions in the country do, as a holding/dicta as broadly stated as the Majority's here could significantly upend sentencings in cases involving sexual offenses.

"attitudes towards sex and prior situations" signaled that he posed a greater risk to the public. He certainly posed a great risk to the victim in this case.

¶25    LeBlanc provided the circuit court with every indication that (1) he views females not as individuals with dignity and deserving of respect but as objects for his sexual entertainment and (2) neither laws against certain sexual activity (sex with minors and adultery) nor a sense of fidelity to his wife would stop him from satisfying his appetite for such entertainment, if he believed he could get away with it. In short, the court's consideration of LeBlanc as posing a greater risk of future criminal sexual conduct because of his unapologetic "attitudes towards sex" and his sexual "behaviors" consistent with those attitudes was not unconstitutional, unreasonable, or "improper."