STATE of Wisconsin, Plaintiff-Respondent,

v.

Shawn A. BEASLEY, Defendant-Appellant.†

Court of Appeals

*No. 02–2229–CR. Submitted on briefs April 10, 2003.—Decided February 26, 2004.*

2004 WI App 42

(Also reported in 678 N.W.2d 600.)

† Petition to review denied 5-17-04.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Robert T. Ruth* of *Ruth Law Office*, Madison.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Warren D. Weinstein*, assistant attorney general, and *Peggy A. Lautenschlager*, attorney general.

Before Dykman, Vergeront and Lundsten, JJ.

¶ 1. LUNDSTEN, J. Shawn Beasley appeals a judgment of conviction and postconviction ruling of the circuit court. Beasley challenges two burglary charges, and his resulting convictions, on multiplicity grounds. We reject Beasley's arguments and affirm the judgment of conviction and postconviction ruling of the circuit court.

## *Background*

¶ 2. Shawn Beasley and other men were charged with multiple serious crimes arising out of a home invasion and fatal shooting. Beasley was tried before a jury on seven charges. He was convicted on all counts, including the first-degree intentional homicide of Adrian Gonzalez.

¶ 3. Beasley's challenge on appeal involves only two of his convictions: Count 5, burglary with intent to steal while armed with a dangerous weapon, in violation of WIS. STAT. § 943.10(2)(a) (1997–98),[1] and Count 6, burglary with intent to steal while committing a battery upon a person lawfully in the burglarized enclosure, in violation of § 943.10(2)(d). Beasley contends these charges and the corresponding convictions are multiplicitous. Beasley raised his multiplicity challenge for the first time during postconviction proceedings, and the circuit court rejected it. Beasley asks this court to vacate one of these convictions.

## *Discussion*

¶ 4. Beasley presents a multiplicity challenge. He asserts he was twice charged with and convicted of the

---

[1] All references to the Wisconsin Statutes are to the 1997–98 version unless otherwise noted.

472

underlying crime of burglary with intent to steal, as that crime is defined in Wis. Stat. § 943.10(1). In Beasley's view, he was convicted of this crime once when he was convicted of Count 5, burglary with intent to steal while armed with a dangerous weapon (§ 943.10(2)(a)), and a second time when he was convicted of Count 6, burglary with intent to steal while committing a battery upon a person lawfully in the burglarized enclosure (§ 943.10(2)(d)). Beasley contends that the "while armed" element of Count 5 and the battery element of Count 6 are penalty enhancers that enhance the same Class C felony, burglary, to a Class B felony.[2]

¶ 5. We reject Beasley's challenge for two reasons. First, the subsections of Wis. Stat. § 943.10(2) do not define penalty enhancers, they define distinct crimes. Second, Beasley has not met his burden of showing that the legislature did not intend to impose multiple punishments.[3]

## Standard of Review

¶ 6. We review double jeopardy and multiplicity challenges without deference to the circuit court. *See*

---

[2] The convictions in this case relate to crimes committed before February 1, 2003. For crimes committed on or after that date, burglary under Wis. Stat. § 943.10(1) has been reclassified to a Class F felony and burglary under § 943.10(2) has been reclassified as a Class E felony. *See* 2001 Wis. Act 109, §§ 721, 722, 9459.

[3] Beasley acknowledges that he first raised his multiplicity claim in a postconviction motion. Nonetheless, the circuit court chose to address Beasley's claim on the merits, and the State invites this court to do the same. Accordingly, we do not address possible waiver arguments.

*State v. Multaler*, 2002 WI 35, ¶ 52, 252 Wis. 2d 54, 643 N.W.2d 437; *State v. Anderson*, 219 Wis. 2d 739, 746, 580 N.W.2d 329 (1998).

*Method for Reviewing Multiplicity Claims*

¶ 7. In *State v. Davison*, 2003 WI 89, 263 Wis. 2d 145, 666 N.W.2d 1, the supreme court explained the "established methodology" for reviewing multiplicity claims:

> First, the court determines whether the charged offenses are identical in law and fact using the *Blockburger* test. If it is determined, using this test, that the offenses are identical in law and fact, the presumption is that the legislative body did not intend to punish the same offense under two different statutes. "Accordingly, where two statutory provisions proscribe the 'same offense,' they are construed not to authorize cumulative punishments *in the absence of a clear indication of contrary legislative intent.*" (Emphasis added.)
>
> Conversely, if under the *Blockburger* test the charged offenses are different in law or fact, a presumption arises that the legislature did intend to permit cumulative punishments. "This presumption can only be rebutted by clear legislative intent to the contrary."
>
> Second, even if the charged offenses are *not* identical in law and fact, the court must still determine whether the legislature intended multiple offenses to be brought as a single count. At this juncture, however, it is the defendant's burden to show a clear legislative intent that cumulative punishments are not authorized.

*Id.*, ¶¶ 43–45 (citations omitted).

¶ 8. The *Blockburger* test inquires whether "each provision requires proof of an additional fact which the

other does not." *Blockburger v. United States*, 284 U.S. 299, 304 (1932). Stated differently, courts must "consider whether each of the offenses . . . requires proof of an element or fact that the other does not." *State v. Derango*, 2000 WI 89, ¶ 30, 236 Wis. 2d 721, 613 N.W.2d 833.

¶ 9. If, under *Blockburger*, charges are not identical in law and fact, there is no potential double jeopardy violation. *See Davison*, 263 Wis. 2d 145, ¶¶ 33, 46. Instead, when charges are not identical in law and fact, the remaining multiplicity question is whether there is a due process violation. A due process violation is present if "*the legislature did not intend to authorize multiple convictions and cumulative punishments.*" *Id.*, ¶ 46. The *Davison* court provides guidance for this particular type of legislative intent inquiry:

> As we seek legislative intent in a multiplicity claim, the court does not stop at the language of the subsection. Instead, we analyze four factors to determine legislative intent: (1) all applicable statutory language; (2) the legislative history and context of the statute; (3) the nature of the proscribed conduct; and (4) the appropriateness of multiple punishment for the conduct.

*Id.*, ¶ 50. The dissent in *Davison* points out that this analysis deviates from the "traditional rules for discerning legislative intent," which the dissent describes as follows: the "usual statement is that if a statute is ambiguous, the court examines the history, context, subject matter and object of the statute to discern legislative intent." *Id.*, ¶¶ 117, 123 n.9 (Abrahamson, C.J., dissenting).

¶ 10. Thus, *Davison* sets forth the following analysis. If charged offenses are identical in law and fact using the *Blockburger* test, there is a presumption that the legislature did not intend multiple punishments. This presumption is only overcome by a clear indication of contrary legislative intent. On the other hand, if charged offenses are *not* identical in law and fact using the *Blockburger* test, there is no potential double jeopardy problem, but there may be a due process problem if the legislature did not intend to authorize cumulative punishments. In this second situation, there is a presumption that the legislature intended to permit cumulative punishments, and the defendant has the burden of overcoming this presumption by showing a clear legislative intent that cumulative punishments are not authorized. The defendant must meet that burden in light of four factors: (1) all applicable statutory language; (2) legislative history and context of the statute; (3) the nature of the proscribed conduct; and (4) the appropriateness of multiple punishment.

*Application of Multiplicity Review Method to the Facts of this Case*

¶ 11. We must first consider the *Blockburger* test, which looks at the elements of the charged crimes. Our analysis under *Blockburger* is affected by the validity of Beasley's assertion that the statutory scheme involves penalty enhancers. Accordingly, we begin by addressing Beasley's penalty enhancer argument.

¶ 12. In Beasley's view, the subsections of Wis. Stat. § 943.10(2) define penalty enhancers for the underlying crime of burglary, as defined in § 943.10(1). The relevant statutory language reads as follows:

**943.10 Burglary. (1)** Whoever intentionally enters any of the following places without the consent of the person in lawful possession and with intent to steal or commit a felony in such place is guilty of a Class C felony:

(a) Any building or dwelling; or

. . . .

**(2)** Whoever violates sub. (1) under any of the following circumstances is guilty of a Class B felony:

(a) While armed with a dangerous weapon or a device or container described under s. 941.26(4)(a); or

(b) While unarmed, but arms himself with a dangerous weapon or a device or container described under s. 941.26(4)(a) while still in the burglarized enclosure; or

(c) While in the burglarized enclosure opens, or attempts to open, any depository by use of an explosive; or

(d) While in the burglarized enclosure commits a battery upon a person lawfully therein.

¶ 13. Beasley's argument, that the subsections of WIS. STAT. § 943.10(2) define *penalty enhancers* rather than individual crimes, has superficial appeal and, at first blush, might appear to comport with common sense. But our analysis cannot rest on loose characterizations of a statutory scheme. A clear-eyed review of the statutes shows that the legislature did not fashion the subsections of § 943.10(2) as penalty enhancers. Instead, the plain language used defines stand-alone crimes, each with an element the others do not have.

477

¶ 14. Penalty enhancers, such as those defined in Chapter 939, authorize specified increases to separate specified penalties for underlying crimes. Thus, the underlying crime has a penalty, and the enhancer adds an additional penalty. Because of this structure, when the facts support multiple penalty enhancers, multiple enhancers may normally be applied to the same underlying crime. That is not the structure of WIS. STAT. § 943.10(2).

¶ 15. The subsections of WIS. STAT. § 943.10(2) each define a complete stand-alone crime. For example, § 943.10(2)(a) reads:

> **(2)** Whoever violates [§ 943.10(1)] under any of the following circumstances is guilty of a Class B felony:
>
> (a) While armed with a dangerous weapon or a device or container described under s. 941.26(4)(a) . . . .

This language does not add an additional penalty to an underlying crime; it fully defines a distinct Class B felony. Section 943.10(2) *incorporates* the definition of burglary contained in § 943.10(1). Unlike a penalty enhancer, § 943.10(2)(a) contains all of the elements of the crime and is properly read as follows:

> Whoever intentionally enters any of the places specified in § 943.10(1) without the consent of the person in lawful possession and with intent to steal or commit a felony, while armed with a dangerous weapon or a device or container described under s. 941.26(4)(a), is guilty of a Class B felony.

¶ 16. Further, unlike penalty enhancers, the various aggravating circumstances in the subsections of WIS. STAT. § 943.10(2) cannot be added to the underlying crime of burglary, either singly or in multiples. The

reason is simple: they are fully defined stand-alone crimes, not penalty enhancers.

¶ 17. Beasley asserts that the easiest way to understand his multiplicity challenge is to consider the following hypothetical:

> What would [have happened] if the jury [had] convicted [Beasley] on count five and six, but answered the enhancement questions in the negative? In this possible scenario, [Beasley] would be convicted of two counts of the exact same Burglary with Intent to Steal. That is obviously a double jeopardy violation.

The problem with Beasley's hypothetical is twofold. First, it really constitutes a challenge to the structure of the jury instructions, not a challenge to the propriety of multiple convictions under the statutes. In the absence of an objection to alleged instructional error, "this court is without the power to consider the objection." *State v. Ward*, 228 Wis. 2d 301, 305, 596 N.W.2d 887 (Ct. App. 1999).[4] Second, we agree with the trial court that the jury could *not* have found Beasley guilty of burglary only and, therefore, could not have found him twice guilty of that crime only.

¶ 18. The verdict forms for both Counts 5 and 6 were in the same format. The verdict form for Count 5, burglary with intent to steal while possessing a dangerous weapon, reads as follows:

> We, the Jury, find the defendant, Shawn A. Beasley, guilty of Party to the Crime of Burglary with Intent to

---

[4] We may, however, address unobjected-to jury instructions "by way of our discretionary reversal authority under Wis. Stat. § 752.35." *State v. Sterzinger*, 2002 WI App 171, ¶ 19 n.7, 256 Wis. 2d 925, 649 N.W.2d 677, *review denied*, 2002 WI 121, 257 Wis. 2d 118, 653 N.W.2d 890 (Sept. 26, 2002) (No. 01–1440–CR).

Steal, in violation of sections 943.10(2)(a), and 939.05, of the Wisconsin Statutes, as charged in Count 5 of the Information herein.

IF YOU FIND THE DEFENDANT GUILTY OF COUNT 5, YOU MUST ANSWER THE FOLLOWING QUESTION:

Was the crime of Party to the Crime of Burglary with Intent to Steal committed while possessing a dangerous weapon?

Answer: _____

("Yes" or "No")

Although this verdict form told the jury it should only address the last element if it found Beasley "guilty of Count 5," the form did not provide a place for the jury to render a verdict on Count 5 without the weapon possession element. Rather, the jury was given only two choices: answer "Yes" or answer "No" to the existence of the weapon possession element. By answering yes, Beasley's jury affirmed that it found all of the other elements of this Class B felony.[5] This form did not give the jury the opportunity to find Beasley guilty of burglary with intent to steal alone. If the jury did not

---

[5] The instructions given to Beasley's jury make this clear. With respect to Count 5, those instructions read, in pertinent part:

> Burglary, as defined by the Criminal Code of Wisconsin, is committed by one who intentionally enters a building without the consent of the person in lawful possession and with intent to steal.
>
> Before you may find the defendant guilty of this offense, the State must prove by evidence which satisfies you beyond a reasonable doubt that the following four elements are present . . . .
>
> Number one, that the defendant or another intentionally entered a building.

find that all of the elements, including possessing a dangerous weapon, were present, its only option was to answer "no," resulting in acquittal on Count 5. The same is true with respect to Count 6.

¶ 19. Moreover, our resolution of Beasley's multiplicity challenge does not depend on the particular form of the verdicts in this case. The result would be the same even if the form verdicts had given Beasley's jury the opportunity to find Beasley guilty of simple burglary alone. In that situation, the verdict forms would

---

Two, that the defendant or another entered the building without the consent of any person in lawful possession.

Three, that the defendant or another knew that the entry was without consent.

Four, that the defendant or another entered the building with intent to steal.

. . . .

This portion of the definition of burglary all relate[s] to both Counts 5 and 6.

Now, Count 5 charges in addition to that that this occurred while armed, and these instructions apply now to Count 5.

If you are satisfied beyond a reasonable doubt that the defendant committed all the elements of burglary . . . you should find the defendant guilty of Count 5, party to the crime of burglary with intent to steal.

If you are not so satisfied, you must find the defendant not guilty of Count 5.

Count 5 of the Information alleges not only that the crime of burglary was committed, but also that crime was committed while armed with a dangerous weapon.

If you find the defendant guilty of Count 5, party to the crime of burglary, you must answer the following questions yes or no: Was the crime of burglary committed while armed with a dangerous weapon?

have included two extra answers, but Beasley's jury still would have found the existence of all of the elements of the Class B felony defined in Wis. Stat. § 943.10(2)(a), and all of the elements of the separate Class B felony defined in § 943.10(2)(d).

■

¶ 20. Having rejected Beasley's penalty enhancer argument, we now apply the first step of multiplicity analysis, the *Blockburger* test. The question is "whether each of the offenses in this case requires proof of an element or fact that the other does not." *Derango*, 236 Wis. 2d 721, ¶ 30. It is readily apparent that Count 5 requires proof of an element and a fact that Count 6 does not, namely, while armed with a dangerous weapon. Similarly, Count 6 requires proof of an element and a fact that Count 5 does not, namely, battery.

¶ 21. Because Counts 5 and 6 are not identical in law, there is no potential double jeopardy problem and it is presumed that the legislature intended to permit multiple punishments for these crimes. *See Davison*, 263 Wis. 2d 145, ¶¶ 43–46. There may, however, still be a due process problem if the legislature did not intend to authorize cumulative punishments. Thus, we turn our attention to legislative intent. Beasley has the burden of showing clear legislative intent that multiple punishments have not been authorized by the legislature. *Id.*, ¶¶ 44–45.

¶ 22. Normally, we would address the four legislative intent factors identified in *Davison*, that is, "(1) all applicable statutory language; (2) the legislative history and context of the statute; (3) the nature of the proscribed conduct; and (4) the appropriateness of multiple punishment for the conduct." *Id.*, ¶ 50. How-

ever, we need not address these factors individually because Beasley makes only two legislative intent arguments.

¶ 23. Beasley argues that the legislature created one underlying crime of burglary with four possible "enhancements" under Wis. Stat. § 943.10(2) and, therefore, the legislature could not have intended that a person be convicted multiple times for the same underlying burglary. However, we have demonstrated that this argument begins with an invalid premise. Section 943.10(2) defines individual crimes, not penalty enhancers. In fact, the clearest expression of legislative intent is the legislature's decision *not* to define the circumstances listed in the subsections of § 943.10(2) as penalty enhancers. By defining these subsections in terms of stand-alone crimes, rather than penalty enhancers, the legislature deprived the State the ability to charge a single underlying burglary with multiple penalty enhancers relating to the aggravating circumstances listed in § 943.10(2). That is, in order to address the legislative concern represented by each subsection (i.e., an armed intruder, an intruder who arms himself or herself after entry, use of an explosive to open a depository, and battery), a defendant must be charged with multiple Class B felonies when more than one of these circumstances is present.

¶ 24. Beasley's only other legislative intent argument is based on language in the comment to Wis. Stat. § 343.11 in 1953 A.B. 100 (a prior version of the aggravated burglary statute), which states:

> Before a person can be convicted under this section, it is necessary to find the existence of all the elements necessary to constitute a crime under section 343.10

[currently sec. 943.10(1)], and in addition the existence of one of the aggravating factors set forth in this section.

Comment to WIS. STAT. § 343.11, 1953 A.B. 100 (codified as Laws of 1953, ch. 623 (the Criminal Code)). This language, however, does not support Beasley's legislative intent argument. To the contrary, it describes the statutory scheme in a manner consistent with our discussion rejecting Beasley's enhancer argument.

¶ 25. Beasley has not met his burden of showing clear legislative intent that multiple punishments were not authorized by the legislature. Our own independent review of the statute, legislative history, nature of the proscribed conduct, and appropriateness of multiple punishments does not suggest that Beasley has missed a viable legislative intent argument.

*By the Court.*—Judgment and order affirmed.