STATE of Wisconsin, Plaintiff-Respondent,

v.

Brandon L. MASON, Defendant-Appellant.

Court of Appeals

*No. 03–2693–CR. Submitted on briefs April 22, 2004.—Decided August 19, 2004.*

2004 WI App 176

(Also reported in 687 N.W.2d 526.)

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Ellen Henak*, assistant state public defender of Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Aaron R. O'Neil*, assistant attorney general, and *Peggy A. Lautenschlager*, attorney general.

Before Vergeront, Lundsten and Higginbotham, JJ.

¶ 1. LUNDSTEN, J.   Brandon Mason seeks resentencing. He argues that the circuit court misconstrued the felony murder statute, WIS. STAT. § 940.03 (1999–2000),[1] and, therefore, miscalculated Mason's possible maximum term of initial confinement. For purposes of calculating initial confinement, it matters under truth-in-sentencing whether felony murder is a penalty enhancer added to the underlying crimes listed in that statute, or instead is a stand-alone unclassified crime. The circuit court concluded that felony murder is a penalty enhancement statute and, consequently, that felony murder/armed robbery has a maximum term of

---

[1] All references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise noted.

initial confinement of 40 years. However, we agree with Mason that attempted felony murder/armed robbery is a stand-alone unclassified crime with a maximum term of initial confinement of 37 years and 6 months. In the absence of a viable harmless error argument from the State, we reverse and remand for resentencing.

### Background

¶ 2. The homicide victim, Adrian Drew, was in his car when he was approached by Mason. Mason wore a mask and displayed a handgun. Drew attempted to flee. Drew put his car into gear but, before he pulled away, Mason shot Drew in the chest. Drew drove off at a high rate of speed, but soon stopped and told his passenger he had been shot. Drew died at the scene. In addition to other evidence, Mason later admitted he was attempting to steal Drew's car.

¶ 3. Mason pled guilty to one count of felony murder/attempted armed robbery. At sentencing, the parties agreed that the maximum bifurcated penalty was 50 years, but disagreed about the maximum period of initial confinement. The circuit court concluded that the felony murder statute is the "equivalent" of a penalty enhancer and, therefore, carried a possible period of initial confinement of 40 years. The circuit court sentenced Mason to a bifurcated sentence of 40 years, comprised of 27 years of initial confinement and 13 years of extended supervision.

### Discussion

¶ 4. The resolution of this case turns on whether the felony murder statute, WIS. STAT. § 940.03, is a penalty enhancer added to the underlying crimes listed in that statute, or is instead a stand-alone unclassified

crime. Although Mason's maximum bifurcated sentence is the same under either scenario, 50 years, the difference matters because it affects the calculation of Mason's maximum term of initial confinement under truth-in-sentencing. As summarized below, if the felony murder statute is a penalty enhancer, Mason's maximum term of initial confinement is 40 years. If, instead, felony murder is a stand-alone unclassified crime, Mason's maximum term of initial confinement is 37 years and 6 months.

¶ 5.   Mason committed his crime on July 30, 2002. Accordingly, the applicable statutes are found in the 1999–2000 version of the statutes and, unless otherwise noted, all statutory references in this decision are to that version. Since then, parts of several statutes we discuss have changed. In footnotes, we comment on some of those changes to assist the reader in applying this decision to the current statutes.

*Initial Confinement Calculation:*
*Felony Murder as a Penalty Enhancer*

¶ 6.   Armed robbery, under WIS. STAT. §§ 943.32(2) and 973.01(2)(b)1., carries a maximum term of initial confinement of 40 years. This is true because, under those statutes, armed robbery is a Class B felony and the specified maximum initial confinement for a Class B felony is 40 years. Application of the attempt statute, WIS. STAT. § 939.32(1), reduces that term by half, to 20 years.

¶ 7.   If the felony murder statute is treated as a penalty enhancer, it adds 20 years to the maximum term of initial confinement, for a total of 40 years of initial confinement. *See* WIS. STAT. § 973.01(2)(c); *see also State v. Jackson*, 2004 WI 29, ¶ 6, 270 Wis. 2d 113,

676 N.W.2d 872; *State v. Volk*, 2002 WI App 274, ¶¶ 35–36, 258 Wis. 2d 584, 654 N.W.2d 24.

*Initial Confinement Calculation: Felony*
*Murder as a Stand-Alone Unclassified Crime*

¶ 8. Because attempted armed robbery, under WIS. STAT. §§ 939.32(1), 943.32(2), and 939.50(3)(b), carries a maximum bifurcated sentence of 30 years, and because the felony murder statute specifies that the maximum shall be 20 years more, the maximum bifurcated sentence for felony murder/attempted armed robbery is 50 years.

¶ 9. Under truth-in-sentencing, the term of initial confinement for unclassified felonies is subject to the "75% rule." WISCONSIN STAT. § 973.01(2)(b)6. provides that the maximum term of initial confinement for an unclassified felony is "75% of the total length of the bifurcated sentence." This language remains unchanged, but has been renumbered to § 973.01(2)(b)10. (2001–02).

¶ 10. Thus, if felony murder/attempted armed robbery is treated as a stand-alone unclassified crime, Mason's maximum term of initial confinement is 75% of 50 years, or 37 years and 6 months.[2]

---

[2] The current statutes also produce different terms of initial confinement depending on how felony murder is viewed. Armed robbery is currently a Class C felony, carrying a maximum term of initial confinement of 25 years. WIS. STAT. §§ 943.32(2) and 973.01(2)(b)3. (2001–02). Application of the attempt statute, WIS. STAT. § 939.32(1) and (1g) (2001–02), reduces that term by half, to 12 years and 6 months. The current felony murder statute, WIS. STAT. § 940.03 (2001–02), if

*Whether Felony Murder is a Penalty*
*Enhancer or a Stand-Alone Unclassified Crime*

■

¶ 11.   We agree with Mason that resolution of this case depends on the proper construction of the felony murder statute. We review questions of statutory construction *de novo*. *State v. Delaney*, 2003 WI 9, ¶ 12, 259 Wis. 2d 77, 658 N.W.2d 416.

¶ 12.   The last time a majority of the supreme court expressly took up and set forth governing principles of statutory construction was in *State ex rel. Kalal v. Circuit Court*, 2004 WI 58, ¶¶ 44–46, 271 Wis. 2d 633, 681 N.W.2d 110. The author of *Kalal* subsequently provided a summary of that decision:

> "[T]he purpose of statutory interpretation is to determine what the statute means so that it may be given its full, proper, and intended effect." . . . "We assume that the legislature's intent is expressed in the statutory language."

treated as a penalty enhancer, adds 15 years to the maximum term of initial confinement, for a total of 27 years and 6 months of initial confinement.

On the other hand, if the current felony murder statute is treated as an unclassified stand-alone crime, felony murder/ attempted armed robbery carries a maximum term of initial confinement of 26 years and 3 months. Under the current statutes, armed robbery is a 40–year Class C felony. Wis. Stat. §§ 943.32(2) and 939.50(3)(c) (2001–02). Cutting that maximum in half under the attempt statute produces a maximum bifurcated sentence of 20 years. Because the current felony murder statute specifies that the maximum shall be 15 years more,˙ the maximum bifurcated sentence for felony murder/attempted armed robbery is 35 years. Applying the 75% rule found in Wis. Stat. § 973.01(2)(b)10 (2001–02) yields a maximum term of initial confinement of 26 years and 3 months.

Thus, statutory interpretation "begins with the language of the statute. If the meaning of the statute is plain, we ordinarily stop the inquiry." Statutory language is given its common, ordinary, and accepted meaning, except that technical or specially-defined words or phrases are given their technical or special definitional meaning.

"[S]tatutory language is interpreted in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results." Statutes are read where possible to give reasonable effect to every word, to avoid surplusage. "If this process of analysis yields a plain, clear statutory meaning, then there is no ambiguity, and the statute is applied according to this ascertainment of its meaning." . . .

. . . "[S]cope, context, and purpose are perfectly relevant to a plain meaning interpretation of an unambiguous statute as long as the scope, context, and purpose are ascertainable from the text and structure of the statute itself, rather than extrinsic sources, such as legislative history."

. . . Wisconsin courts generally do not consult extrinsic sources of interpretation, such as legislative history, unless the statute is ambiguous . . . . If the language of the statute is ambiguous even when considered in light of its textually ascertainable context, scope, and purpose, then the primary intrinsic analysis has been exhausted and secondary extrinsic sources of interpretation become relevant.

*State v. Hayes*, 2004 WI 80, ¶¶ 105–09, 273 Wis. 2d 1, 681 N.W.2d 203 (Sykes, J., concurring) (citations omitted).

¶ 13. Accordingly, we will first attempt to resolve the dispute before us by looking at "the scope, context, and purpose [that] are ascertainable from the text and structure of the statute itself, rather than extrinsic sources, such as legislative history." *Kalal*, 271 Wis. 2d 633, ¶ 48.

¶ 14. The version of Wis. Stat. § 940.03 in effect at the time of Mason's crime provided as follows:

> **Felony murder.** Whoever causes the death of another human being while committing or attempting to commit a crime specified in s. 940.225(1) or (2)(a), 943.02, 943.10(2) or 943.32(2) may be imprisoned for not more than 20 years in excess of the maximum period of imprisonment provided by law for that crime or attempt.[3]

¶ 15. This statute shares a key characteristic with recognized penalty enhancers: it adds a specified term to the maximum penalty applicable to underlying crimes based on the presence of an additional element. This differentiates felony murder from the burglary statutes we recently construed in *State v. Beasley*, 2004 WI App 42, ¶¶ 12, 15, 271 Wis. 2d 469, 678 N.W.2d 600. In *Beasley*, we concluded that the various types of burglary were stand-alone crimes in part because the

---

[3] We note that for purposes of the question presented here there does not appear to be any relevant difference between this statute and the current statute. The current version of Wis. Stat. § 940.03 (2001–02) reads:

> **Felony murder.** Whoever causes the death of another human being while committing or attempting to commit a crime specified in s. 940.225(1) or (2)(a), 943.02, 943.10(2), 943.23(1g), or 943.32(2) may be imprisoned for not more than 15 years in excess of the maximum term of imprisonment provided by law for that crime or attempt.

various types of aggravated burglary are designated as Class B felonies; there is no add-on structure to the penalty provision.

¶ 16.   On the other hand, *like* the statute in *Beasley*, felony murder is located not in Chapter 939, but in one of the chapters of the criminal code that define substantive crimes. Also like the statute in *Beasley*, the felony murder statute fully defines crimes not by detailing all the elements, but by referencing some elements located elsewhere. *Id.*, ¶ 15 ("Section 943.10(2) *incorporates* the definition of burglary contained in § 943.10(1).").

¶ 17.   We conclude that an analysis of "the scope, context, and purpose" that is "ascertainable from the text and structure of the statute itself," *Kalal*, 271 Wis. 2d 633, ¶ 48, does not unambiguously disclose whether the legislature intended that felony murder be a penalty enhancer or a stand-alone crime. Accordingly, we turn our attention to legislative history and other extrinsic aids. Unfortunately, although the statute has much history, almost none of it sheds light on the question before us. Rather than spend time explaining why we find various legislative history arguments made by Mason and the State unpersuasive, we will direct our attention to the one aspect of that history that does shed some light on relevant legislative intent.

¶ 18.   In 1955, the penalty structure in the felony murder statute, then called third-degree murder, was similar to its current form. The penalty for felony murder was arrived at by adding 15 years to the penalty for other crimes. Wis. Stat. § 940.03 (1955). The penalty structure changed in 1977. As part of a broad penalties reclassification in 1977, the add-on penalty structure of felony murder was deleted and the crime was designated as a Class B felony. *See* Walter Dickey, David

Schultz, and James L. Fullin, Jr., *The Importance of Clarity in the Law of Homicide: The Wisconsin Revision,* 1989 WIS. L. REV. 1323, 1366; WIS. STAT. § 940.02(2) (1977). With this change, felony murder was no longer structured like a penalty enhancer. In fact, under the analysis we recently used in *Beasley,* 271 Wis. 2d 469, ¶¶ 12, 15, it seems apparent that we would have concluded that felony murder—designated as a Class B felony—was a stand-alone crime. Like the statute at issue in *Beasley,* this prior version of the felony murder statute contained all of the elements of the crime and specified the penalty as a particular class of felony. *See id.,* ¶ 15 ("This language [in WIS. STAT. § 943.10(2)(a)] does not add an additional penalty to an underlying crime; it fully defines a distinct Class B felony. Section 943.10(2) *incorporates* the definition of burglary contained in § 943.10(1).").

¶ 19.  Of course, felony murder is no longer a Class B felony and the question is why. As the Dickey article explains, there was widespread agreement that classifying felony murder as a Class B felony was a mistake, but there was sharp disagreement on the solution. A prolonged and complicated debate ensued over how to amend the statute or whether to repeal it. Dickey, 1989 WIS. L. REV. at 1366–70. The debate involved many aspects of the crime and its interaction with other crimes, but what is missing from information we have about that debate is any suggestion that the legislature thought it was dealing with a penalty enhancer. *Id.* When yet another bill to amend felony murder was introduced in 1987—the year the statute was finally amended once more to, essentially, its current form— that bill would have made felony murder a Class A felony. *Id.* at 1370. A compromise led to a return to the penalty structure prior to 1978, but that compromise,

443

so far as we can tell, had nothing to do with whether felony murder was considered a stand-alone crime or a penalty enhancer. *See id.* at 1366–70.

¶ 20. Therefore, we are persuaded that the legislature believed it was addressing a stand-alone crime, not a penalty enhancer. To summarize, the legislature at one time designated felony murder as a Class B felony, thus eliminating the primary reason the State now contends felony murder is a penalty enhancer:   its add-on penalty structure. Further, in fixing unrelated problems, the legislature considered retaining the designated felony approach by making felony murder a Class A felony. We think it apparent that if the legislature thought it was dealing with a penalty enhancer, some part of the debate would reflect the need to return to an add-on penalty structure so as to restore the statute to penalty-enhancer status. However, we find no indication that this was part of the debate. Rather, the legislature returned to the old penalty language for reasons unrelated to whether the statute was thought to be a penalty enhancer.

¶ 21. This is a close case. But the relevant legislative history indicates that the legislature considers felony murder to be a stand-alone substantive crime. Accordingly, we agree with Mason that the circuit court sentenced him under an erroneous view of the maximum term of initial confinement.

¶ 22. The State argues that, even if the circuit court acted under a misapprehension of the true maximum term of initial confinement, the error was harmless because the circuit court imposed a term of initial confinement of 27 years, well below the true maximum of 37 years and 6 months. In support, the State relies on

*State v. Quiroz*, 2002 WI App 52, ¶¶ 5–16, 251 Wis. 2d 245, 641 N.W.2d 715. However, the State's reliance on *Quiroz* is misplaced.

¶ 23. The defendant in *Quiroz* needed to demonstrate a manifest injustice as a prerequisite to plea withdrawal. *Id.*, ¶ 7. The defendant complained that his plea was not knowingly and voluntarily entered because the circuit court misinformed him about the maximum penalty. *Id.*, ¶ 8. After explaining that the circuit court correctly calculated the maximum and provided accurate information to the defendant, we went on to say:

> Furthermore, even if the maximum penalty had been overcalculated, which we have determined it was not, Quiroz fails to establish that a plea withdrawal would correct a manifest injustice. Quiroz was sentenced to twelve years in prison, less than the fourteen-year maximum correctly calculated by the court and less than the thirteen-year maximum incorrectly calculated by Quiroz. No matter which way the maximum sentence is calculated, Quiroz received less than the maximum.

*Id.*, ¶ 16. Thus, the issue in *Quiroz* was not whether this court may or should order resentencing when a sentencing court acts under a misapprehension of an applicable maximum sentence. Rather, we opined that the defendant in that case did not establish a "manifest injustice" *warranting plea withdrawal* because his sentence was less than the maximum, even assuming a lower maximum than contemplated by the sentencing court.

¶ 24. The State provides no other authority for its harmless error argument and, in the absence of any additional developed argument on the topic, we decline to declare the error harmless.[4] Accordingly, we remand for resentencing.[5]

*By the Court.*—Judgment and order reversed and cause remanded with directions.

---

[4] The State has not argued that the error was harmless under reasoning analogous to that used in penalty enhancer cases in which error with respect to a penalty enhancer is ignored if the penalty enhancer is not used to enhance a sentence. *See State v. Kourtidias,* 206 Wis. 2d 574, 590, 557 N.W.2d 858 (Ct. App. 1996). We mention this possible harmless error argument *solely* because we think many readers will wonder whether the argument was made. It was not. We stress that we express no opinion on the topic.

[5] Mason also argues that the circuit court erred when, at sentencing, the court considered the victim's good character and standing as a community leader when determining the severity of Mason's crime. Mason acknowledged that, at the time of briefing, this issue was controlled by our decision in *State v. Gallion,* 2002 WI App 265, 258 Wis. 2d 473, 654 N.W.2d 446. But Mason pointed out that the supreme court had granted review in *Gallion.* The supreme court has now issued its *Gallion* decision, and that decision affirms our conclusion that a sentencing court may consider a victim's good character. *State v. Gallion,* 2004 WI 42, ¶ 68, 270 Wis. 2d 535, 678 N.W.2d 197 ("We reject Gallion's assertion that the good character of the victim is irrelevant."). It follows that we must reject Mason's argument here.