State of Wisconsin, Plaintiff-Respondent,

v.

Kent Kleven, Defendant-Appellant.

Court of Appeals

*No. 03–3362–CR. Submitted on briefs September 7, 2004.—
Decided March 3, 2005.*

2005 WI App 66

(Also reported in 696 N.W.2d 226.)

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Roberta A. Heckes*, Adell.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Aaron R. O'Neil*, assistant attorney general, and *Peggy A. Lautenschlager*, attorney general.

Before Deininger, P.J., Vergeront and Higginbotham, JJ.

¶ 1. DEININGER, P.J. This appeal involves sentencing statutes that were in effect during the first phase of Truth-in-Sentencing (TIS-I). Kent Kleven appeals an amended judgment that resentenced him to prison for attempting to commit a third-degree sexual assault. He also appeals an order that denied him the specific relief he sought from the sentence the court originally imposed. Kleven claims that his original sentence was improper because the court expressly sentenced him to less than the statutory maximum for the attempted assault and then included additional prison time for the dangerous weapon and habitual criminality enhancers to which he was subject. The relief he seeks is the striking of eight years of confinement that the court originally attributed to the penalty enhancers, leaving in place only the three years' confinement that the court originally imposed for the base offense.

¶ 2. We conclude that any errors regarding the manner in which Kleven's sentence was originally imposed were cured when the circuit court resentenced him in response to his motion challenging the original sentence. We further conclude that Kleven is not entitled to be relieved of the enhanced penalties that the court imposed when it resentenced him. We conclude,

471

however, that the circuit court resentenced Kleven under an incorrect understanding of the maximum term of confinement that applied to Kleven's base offense. We therefore reverse the appealed judgment and order, and we remand for resentencing consistent with the conclusions stated in this opinion.

## BACKGROUND

¶ 3. Kleven pled no contest to one count of attempted third-degree sexual assault and to one count of misdemeanor bail jumping.[1] At the time Kleven committed the felony offense (August 2, 2002), third-degree sexual assault was classified as a Class D felony and carried a maximum sentence of ten years' "imprisonment." *See* Wis. Stat. §§ 939.50(3)(d) and 940.225(3) (1999–2000).[2] Further, at that time, the maximum "term of confinement" that could be imposed for a Class

---

[1] The circuit court originally sentenced Kleven on the bail jumping charge, as a repeater, to "one year, six months to run concurrent" with the sentence for attempted third-degree sexual assault. Kleven does not challenge the concurrent sentence imposed for the penalty-enhanced misdemeanor. We do not address the misdemeanor sentence in this opinion.

[2] The 2001–02 Wisconsin Statutes include the sentencing provisions applicable to an offense committed in 2002, but that edition also first sets forth the statutory text as affected by various amendments that became effective on February 1, 2003. For convenience, all references in this opinion to the Wisconsin Statutes are to the 1999–2000 version unless otherwise noted. As the supreme court has explained:

> Wisconsin adopted Truth-in-Sentencing legislation in two phases. The first phase, TIS-I, was enacted in June 1998 and applied to offenses committed on or after December 31, 1999. *See* 1997 Wis. Act 283. The second phase, TIS-II, was enacted in July 2002 and became effective February 1, 2003. *See* 2001 Wis. Act 109. Because [the defendant] was sentenced under the provisions of TIS-I, this case does not address the recent changes of TIS-II.

D felony was five years. *See* WIS. STAT. § 973.01(2)(b)4. Finally, WIS. STAT. § 939.32 then provided that, with certain exceptions not relevant here, "[w]hoever attempts to commit a felony . . . may be . . . imprisoned . . . not to exceed one-half the maximum penalty for the completed crime."

¶ 4. The amended information that served as the basis for Kleven's plea also alleged that he was a "repeater" and that he attempted to commit the sexual assault "while threatening to use a dangerous weapon." These additional allegations subjected him to enhanced penalties. Because he admitted the allegation of a relevant prior felony conviction, his "maximum term of imprisonment" could be increased "by not more than 6 years." WIS. STAT. § 939.62(1)(b). And, because he admitted to having threatened the use of a dangerous weapon, his "maximum term of imprisonment" could be increased by up to an additional four years. WIS. STAT. § 939.63(1)(a)3.

¶ 5. The trial court initially sentenced Kleven for attempted third-degree sexual assault, as enhanced, as follows:

> [T]he Court's going to sentence you on the charge itself 3 years, weapon enhancer 4 years, repeater 4 years for a total of 11 years, extended supervision 1.25, resulting in a total sentence of 12.25.
>
> . . . .
>
> The total length of your sentence then, Mr. Kleven, is 12.25 years . . . and your initial term will be 11 years, zero months; extended supervision, one year, three months.

*State v. Jackson*, 2004 WI 29, ¶ 2 n.2, 270 Wis. 2d 113, 676 N.W.2d 872.

¶ 6. Kleven moved for postconviction relief, requesting "an order vacating sentence enhancers" under the holding of *State v. Harris*, 119 Wis. 2d 612, 619–620, 350 N.W.2d 633 (1984), because the court had imposed an enhanced penalty after deciding to impose less than the maximum sentence for the underlying crime. In response to the motion, the circuit court vacated the original sentence and scheduled a resentencing hearing.[3] At the resentencing, the court reviewed the pertinent factors "as it would in an original sentencing," and imposed the following sentence:

> The sentence of the Court then will be as to the underlying charge, three years and nine months of initial confinement and one year and three months of extended supervision; and that is increased under the weapons enhancer and under the repeat offender enhancer. So the total sentence of the Court will be 11 years as an initial term of confinement. That is intended and issued as a single sentence. Under statutory authority, I'm indicating that three years and three months of that initial confinement are being imposed under and pursuant to the authority of the weapons enhancer statute and I'm further indicating that of that total sentence, four years and zero months are being imposed of initial confinement under authority of the repeat offender enhancer. That makes a total single sentence of 11 years of initial confinement and the extended supervision component under the base charge of attempted third degree sexual assault is one year and three months.

The court explained to Kleven later in its sentencing

---

[3] Then Circuit Court Judge Duane H. Polivka imposed Kleven's original sentence. The decision to vacate that sentence and to resentence Kleven was made by Judge Polivka's successor, Circuit Judge Charles A. Pollex, who also imposed Kleven's new sentence and denied further postconviction relief.

remarks that the "total length of your sentence . . . is 12 years and three months. Your initial term of confinement in prison is 11 years and zero months, and the time that you will serve on extended supervision is one year and three months."

¶ 7. The court entered an amended judgment of conviction that reflected the newly imposed sentence and an order disposing of Kleven's "motion to vacate penalty enhancers," withholding any further relief except for additional incarceration credit to reflect the time Kleven had been imprisoned under his original sentence. Kleven appeals the amended judgment and the order.

## ANALYSIS

¶ 8. Kleven does not challenge the circuit court's discretionary decision, based on relevant sentencing factors, to impose the sentence it did. That is, he does not argue that a total sentence of twelve years and three months, with an eleven-year term of confinement, was unreasonable or unconscionable for the offense he committed, with the admittedly applicable penalty enhancers. Rather, he contends that, once the original sentencing judge decided to impose less than the maximum penalty for the underlying attempted sexual assault, the court committed legal error by then extending his term of confinement pursuant to the penalty enhancers. Kleven claims that the only proper remedy is the vacation of the enhanced period of confinement in its entirety, leaving in place only the term of confinement (three years) originally imposed for the base offense. Kleven thus presents a question of law, which we decide de novo. *See State v. Jackson*, 2004 WI 29, ¶ 11, 270 Wis. 2d 113, 676 N.W.2d 872 (interpreting applicable statutes to determine "how penalty enhanc-

ers are applied at sentencing" is a question of law "subject to independent appellate review").

¶ 9. The circuit court stated in imposing the original sentence that, as to the base offense of attempted third-degree sexual assault, it was ordering three years' confinement plus one year and three months of extended supervision. That would constitute an overall term of "imprisonment" of four years and three months for the base offense. Kleven correctly points out that this is less than the applicable statutory maximum penalty of five years' imprisonment. *See* WIS. STAT. §§ 939.32(1) (providing that those who attempt to commit felonies may be "imprisoned" for up to "one-half the maximum penalty for the completed crime"); 939.50(3)(d) (providing that "imprisonment" for a Class D felony may not exceed ten years, thus producing a maximum five-year term of "imprisonment" for an attempted Class D felony); and 973.01(2)(a) (explaining that "the total length of the bifurcated sentence," consisting of confinement and extended supervision, "may not exceed the maximum period of imprisonment for the felony").

¶ 10. Kleven likens his original sentence to that imposed by the trial court in *Harris*, 119 Wis. 2d at 619–20. The defendant in *Harris* was convicted of attempted robbery, an offense that at the time carried a maximum, indeterminate sentence of five years in prison, and she was a repeater, which subjected her to an additional two years' imprisonment. *See id.* at 614–16. The trial court sentenced her to " 'an indeterminate term of not more than three years' " for the attempted robbery, but then went on to say this: " 'The repeater has been taken into consideration, and there would be six months on the [case number] which would amount to the three years. That

is, 30 months and 6 months . . . .' " *Id.* at 615. The supreme court concluded that the trial court had erroneously exercised its discretion in imposing an additional six months on account of the defendant's repeater status after deciding to sentence the defendant below the maximum for the base offense: "The repeater statute . . . is not applicable to the sentence of a defendant unless the trial court seeks to impose a sentence in excess of that prescribed by law for the crime for which the defendant is convicted." *Id.* at 619.

¶ 11. This court had affirmed the thirty-six month sentence imposed in *Harris*, notwithstanding the "irregularity of attributing a specific portion of a sentence to a particular sentencing criterion." *Id.* at 621. The State argued on review that the supreme court should do likewise "because the trial court was authorized to impose the sentence it did even in the absence of the defendant's alleged repeater status." *Id.* The supreme court, concluded, however, that the sentencing court, having decided to not impose a maximum underlying sentence, relied on an erroneous view of the law when it "attempted to use the repeater statute to enhance the sentence. This constituted an abuse of the sentencing discretion." *Id.* at 625. Accordingly, the court vacated the six months the trial court had imposed as "an enhancement for a repeater status," leaving in place only the thirty months it had imposed for the base offense. *Id.* at 626.

¶ 12. Unlike in *Harris*, the circuit court in this case originally imposed a sentence well in excess of the statutory maximum that could have been imposed for the unenhanced attempted sexual assault. As we have discussed, the maximum term of imprisonment for the attempted third-degree sexual assault was five years'

imprisonment and the court originally sentenced Kleven to eleven years' confinement and a year and three months of extended supervision, for a total sentence of twelve years, three months. Thus, the enhanced penalty statutes, WIS. STAT. §§ 939.62 and 939.63, were very much "applicable" to Kleven's sentence because the circuit court in this case sought "to impose a sentence greater than that prescribed by law" for the base offense. *See Harris*, 119 Wis. 2d at 626. In short, the circuit court did not commit the error identified in *Harris*.

¶ 13. We conclude, therefore, that the remedy ordered by the supreme court in *Harris*—vacation of the enhanced portion of the sentence—is neither necessary nor appropriate on the present facts. We note that, although the supreme court found WIS. STAT. § 973.12(2) inapplicable in *Harris* because the less-than-maximum sentence rendered the enhanced penalty statute for repeaters "inapplicable" to the facts before it, *Harris*, 119 Wis. 2d at 625–26, there is no reason that the rationale of § 973.12(2) should not govern here. It provides that, if a court "indicates in passing sentence how much thereof is imposed because the defendant is a repeater, it shall not constitute reversible error, but the combined terms shall be construed as a single sentence for the present conviction." Section 973.12(2).

¶ 14. We conclude that, provided the sentence imposed exceeds the maximum term of imprisonment established for the base offense, a court's remarks attributing a portion of the sentence to an applicable enhancer does not constitute grounds to vacate that portion of the sentence. As the supreme court explained in *State v. Upchurch*, 101 Wis. 2d 329, 336, 305 N.W.2d

478

57 (1981), a sentencing proceeding is "not a game," in which "a misstatement by the trial judge would result in a windfall to the defendant."

¶ 15. We further conclude that any error in the original sentence stemming from the court's comments that allocated to the base offense a term of imprisonment that was less than the statutory maximum for that offense was cured by the court's decision to vacate the original sentence and resentence him. At resentencing, the court expressly allocated a full five years of imprisonment to the attempted sexual assault (three years, nine months' confinement plus one year, three months' extended supervision), and it emphasized its understanding that it was imposing a "single sentence," consisting of the "base" sentence and the additional terms of confinement authorized by the enhancement statutes. We discuss below whether the court erred in determining the proper bifurcation of the five years' imprisonment it imposed for Kleven's base offense. For present purposes, however, we are satisfied that the court at resentencing intended to, and did, impose a sentence that exceeded the maximum term of imprisonment for Kleven's base offense. In short, no *Harris* violation occurred at resentencing.

¶ 16. Kleven next argues that, because the sentence imposed at his original sentencing included two, separately assessed penalty enhancement terms added to the sentence imposed for the base offense, the court essentially imposed three sentences for a single offense, thereby violating federal and state constitutional protections against double jeopardy. *See Upchurch*, 101 Wis. 2d at 334. In this argument, Kleven continues to focus on his original sentence, instead of that imposed

479

at his resentencing. If, however, the original sentence constituted a double jeopardy violation under *Upchurch*, as Kleven contends, then the proper remedy was that ordered in *Upchurch*: resentencing. *See id.* at 336. Thus, Kleven has already received the relief from his original sentence to which he would be entitled if his original sentence violated double jeopardy protections. Accordingly, we address only whether the sentence the circuit court imposed at resentencing violated constitutional protections against double jeopardy. We conclude it did not.

¶ 17. The trial court in *Upchurch* sentenced the defendant, who was apparently already serving a prison term for a prior offense, as follows:

> [T]he Court will sentence him to one year in prison . . . . At Waupun on the possession with intent to deliver concurrent to what he is now serving as a habitual criminal. The Court will sentence him to one year consecutive to the term I just gave him. I am doing that, sir, because you were on parole and you should not have gotten in trouble again; so you will serve some more time and based upon the fact you were a habitual criminal.

*Id.* at 331–32. The supreme court concluded that the defendant had "received two separate and consecutive one-year sentences for the commission of one criminal act" and that "these multiple sentences violated the principles of double jeopardy." *Id.* at 334. Accordingly, it reversed the judgment of conviction and remanded for resentencing. *Id.* at 336.

¶ 18. We conclude that Kleven's sentence does not suffer from the infirmity the supreme court recognized in *Upchurch*. Here, although the circuit court identified amounts of confinement that it attributed to each of the

two applicable penalty enhancers, the court clearly stated that it was "increas[ing]" Kleven's sentence because of the enhancers, not imposing separate and additional sentences for them. The court emphasized that the eleven years of confinement it ordered was "intended and issued as a single sentence." Thus, unlike in *Upchurch* where the trial court imposed two, consecutive one-year sentences for a single crime, we conclude that the rationale of WIS. STAT. § 973.12(2), which we have quoted and discussed above, applies to "save[]" the sentence imposed by the circuit court at resentencing. *See Upchurch*, 101 Wis. 2d at 335. We again conclude that a sentencing court's allocation of a portion of a single sentence to a penalty enhancer does not, by itself, constitute reversible error.[4]

¶ 19. We turn now to the correctness of the sentence before us under recent decisions of this court and the supreme court that addressed how to compute and bifurcate sentences for offenses committed during the period that the first phase of Truth-in-Sentencing

---

[4] The better practice for sentencing courts would appear to be as follows: First, the court should determine, on the record at sentencing, the length of the maximum total imprisonment that may be imposed for the base offense before any penalty enhancers are applied, as well as the maximum terms of confinement and extended supervision that apply to the base offense. Next, the court should determine and state the maximum term of confinement that applies to the enhanced offense. The court should then explain, based on applicable sentencing factors, why it is imposing the overall sentence that it is, *without* allocating any portions of the confinement imposed among the base offense and enhancers. Such allocation is not required by statute or case law, and in fact, appears to not only be contrary to the rationale of WIS. STAT. § 973.12(2), but may lead to unnecessary confusion or claims of error, as the facts of *Harris, Upchurch* and this case demonstrate.

(TIS-I) was in effect (see footnote 2). The issue is raised by the State, not Kleven. In its response brief, the State offers at least two possible answers to the question of how the proper maximum terms of imprisonment and confinement might be computed on the present facts, and it has submitted supplemental argument on how our recent decision in *State v. Mason*, 2004 WI App 176, 276 Wis. 2d 434, 687 N.W.2d 526, might affect the result. Rather than repeating the various arguments here, we proceed directly to our conclusions as to what the precedents require regarding the sentence calculations in this case.

¶ 20. We begin by observing that third-degree sexual assault was a classified felony under TIS-I, specifically, a Class D felony, for which the statutes specified (1) ten years' maximum imprisonment; (2) five years' maximum confinement; and (3) extended supervision of at least twenty-five percent of the confinement imposed. *See* Wis. Stat. §§ 939.50(3)(d); 973.01(2)(b)4; 973.01(2)(d). The first complication in the facts before us arises from the fact that Kleven was not convicted of a completed crime, but of an attempted felony, for which the applicable statute specified that a defendant may be "imprisoned" for "one-half the maximum penalty for the completed crime." Wis. Stat. § 939.32(1). The statutes did not, however, specify a maximum term of *confinement* for an attempted felony, nor did they otherwise "classify" an attempted felony.

¶ 21. We concluded in *Mason*, however, that the maximum term of confinement under TIS-I for an attempt to commit a classified felony is one-half of the maximum confinement specified for the completed crime. *See Mason*, 276 Wis. 2d 434, ¶ 6. Applied here, this means that Kleven faced a maximum term of

482

confinement for his base offense of two and one-half years (one-half of the five-year maximum confinement specified by statute for a Class D felony). This also means that the circuit court erred at the resentencing when it allocated three years and nine months of confinement to the base offense, because that term of confinement exceeded the maximum confinement applicable to Kleven's base offense. We discuss below the impact of this error, after first addressing the application of the penalty enhancers to Kleven's sentence.

¶ 22. Because an attempt to commit a classified felony is not itself a classified felony under TIS-I, we conclude that the supreme court's holding in *Jackson* governs the application of the two penalty enhancers to Kleven's sentence. The court explained in *Jackson* that, for unclassified felonies under TIS-I, "the penalty enhancer is added initially to the term of confinement pursuant to WIS. STAT. § 973.01(2)(c) and . . . the penalty enhancer cannot be bifurcated." *Jackson*, 270 Wis. 2d 113, ¶ 32. Kleven thus faced a *potential* maximum of twelve and one-half years' confinement: 2.5 years (maximum confinement for base offense) plus 4 years (dangerous weapon enhancer) plus 6 years (repeater enhancer) = 12.5 years' potential maximum confinement for the enhanced offense.

■

¶ 23. The supreme court went on in *Jackson*, however, to apply the rule of lenity in interpreting WIS. STAT. § 973.01, and in so doing, the court concluded that two additional steps are required in order to determine the upper limit of confinement that may be imposed under TIS-I for an enhanced, unclassified felony: (1) the maximum term of imprisonment must be determined, and (2) the maximum term of confinement cannot exceed 75% of the maximum imprisonment. *See*

*id.*, ¶¶ 40–42. Applying the supreme court's methodology to Kleven's doubly enhanced offense results in the following: 5 years (maximum imprisonment for base offense) plus 4 years (dangerous weapon enhancer) plus 6 years (repeater enhancer) = 15 years (maximum imprisonment for enhanced offense) x 75% (per § 973.01(2)(b)6) = 11.25 years (actual maximum term of confinement that may be imposed for enhanced offense). Thus, notwithstanding the circuit court's misstatement of the maximum term of confinement applicable to Kleven's base offense, the total term of confinement it imposed (11 years) did not exceed the maximum term of confinement for the enhanced offense.[5]

¶ 24. One step remains: determining what constraints apply to the term of extended supervision that may be ordered for the enhanced offense. The State correctly notes that the supreme court did not expressly address this issue in *Jackson*. The court ended its analysis after determining that the 75% rule limited the term of maximum confinement that could be ordered. *See id.*, ¶ 44. There are two possibilities regarding what constraints apply to the extended supervision that may be imposed for Kleven's enhanced offense, given that the circuit court ordered an eleven-year term of confinement.

¶ 25. The first possibility is that four years of imprisonment beyond the imposed term of confinement remain available for extended supervision (15 years' maximum imprisonment for enhanced offense less 11 years' confinement imposed = 4 years available for

---

[5] We note that the circuit court imposed Kleven's current sentence on November 4, 2003, which was before the supreme court's decision in *State v. Jackson*, 2004 WI 29, 270 Wis. 2d 113, 676 N.W.2d 872, and our decision in *State v. Mason*, 2004 WI App 176, 276 Wis. 2d 434, 687 N.W.2d 526.

extended supervision). Thus, under this interpretation, because WIS. STAT. § 973.01(2)(d) required that "[t]he term of extended supervision that follows the term of confinement in prison may not be less than 25% of the length of the term of confinement" ordered, Kleven should have been ordered to serve at least 25% of the ordered term of confinement on extended supervision, but not more than four years of such supervision. Applied to the sentence before us, this would mean that the circuit court erred by imposing too short a term of extended supervision. The court imposed 11 years of confinement, meaning that it should have ordered a term of extended supervision of not less than 2.75 years (25% of 11 years), nor more than 4 years, instead of the 1.25 years that it ordered.

¶ 26. The second possibility is that, because "the penalty enhancer cannot be bifurcated," *Jackson*, 270 Wis. 2d 113, ¶ 32, Kleven may be ordered to serve, at most, the maximum term of extended supervision available for his base offense, which is two and one-half years.[6] Under this interpretation, a sentencing court

---

[6] Recall, the maximum term of imprisonment for Kleven's base offense is five years, and the maximum confinement that can be ordered for the base offense is two and one-half years. Thus, because all two and one-half years of the confinement available for the base offense must be deemed to have been imposed in order for the enhanced term of confinement to apply, the maximum available extended supervision that may be ordered under this interpretation is two and one-half years (5 years' maximum imprisonment for base offense less 2.5 years' maximum confinement for base offense = 2.5 years' maximum extended supervision available for enhanced offense).

We also note that, under the rationale of Kleven's argument that his original sentence violated the holding in *Harris* because the court failed to impose a sentence for his base offense that exceeded the maximum imprisonment for his base offense, one

485

would not be able to satisfy the minimum 25%-of-confinement rule for extended supervision if it imposes a term of confinement in excess of ten years. In this case, as we have noted above, the 25% rule produces a minimum term of extended supervision of 2.75 years to follow the eleven years of confinement imposed, which would exceed the maximum 2.5 years' extended supervision available for Kleven's base offense. Also, under this interpretation, the "true" maximum imprisonment applicable to Kleven's enhanced offense is only 13.75 years (maximum confinement of 11.25 years for enhanced offense plus maximum 2.5 years of extended supervision for base offense).

¶ 27. We conclude that the second alternative is the more reasonable interpretation. First, it is consistent with the supreme court's discussion in *Jackson*, which emphasized that penalty enhancers are not to be bifurcated but serve only to extend the confinement portion of a bifurcated sentence under TIS-I. *Jackson*,

could argue that, if an enhanced sentence is imposed (i.e., one that orders more than 2.5 years' confinement), the court *must* order the full 2.5 years of extended supervision available for the base offense. We reject this analysis and result. In order to avoid the error identified in *Harris*, it is only necessary that the sentence imposed exceed the maximum term of imprisonment for the base offense, and this may be accomplished with any combination of enhanced confinement exceeding 2.5 years, which, together with extended supervision equaling at least 25% of the confinement ordered, achieves a total sentence of more than five years' imprisonment. For example, if the court were to sentence Kleven to six-years' confinement and 1.5 years' extended supervision, it will have imposed a term of imprisonment (7.5 years) that exceeds the maximum for the base offense (5 years), while meeting the applicable constraints on extended supervision (at least 25% of confinement, but not to exceed 2.5 years).

270 Wis. 2d 113, ¶¶ 17, 20–24, 30. Second, it is consistent with the rule of lenity as applied in *Jackson* to these "ambiguous penal statutes" because it favors the defendant by producing shorter maximum terms of extended supervision and total imprisonment. *See id.*, ¶ 41.[7] Finally, this interpretation is consistent with our conclusion in *State v. Volk*, 2002 WI App 274, 258 Wis. 2d 584, 654 N.W.2d 24, that, for classified felonies under TIS-I, "a penalty enhancer cannot be applied to the term of extended supervision." *Id.*, ¶ 35.

¶ 28. We thus conclude that the maximum sentence Kleven faced for his enhanced offense was 13.75 years of imprisonment, with not more than 11.25 years' confinement and not more than 2.5 years of extended supervision. Kleven's present sentence does not exceed any of these maximum limitations. Kleven's present sentence, however, does suffer from the infirmity that the sentencing court improperly allocated three years, nine months of confinement to Kleven's base offense. Moreover, Kleven's present sentence includes too short a term of extended supervision, which, under TIS-I was required to be not less than 25% of the confinement ordered, capped, however, as discussed above, at 2.5 years. We must determine, therefore, what remedy to order because of the circuit court's error in bifurcating Kleven's base offense. There are again two possibilities.[8]

---

[7] We read the court's analysis in *Jackson* to mean that penalty enhancers are added to the maximum term of imprisonment for the base offense *only* for the purpose of applying the 75% rule to determine the maximum allowable confinement. *See Jackson*, 270 Wis. 2d 113, ¶¶ 30, 42.

[8] The State does *not* argue that we should affirm Kleven's present sentence on the grounds that it does not exceed any maximum limitations and any error in the circuit court's

¶ 29. The first is that we could simply reallocate one year and three months of Kleven's present sentence from confinement to extended supervision, resulting in the same overall imprisonment imposed by the circuit court (twelve years, three months), but consisting instead of nine years, nine months' confinement, followed by two years, six months of extended supervision. This would effectuate the sentencing court's stated intention to increase Kleven's confinement by a total of seven years and three months beyond the maximum confinement for the base offense, and it would achieve a term of supervision that satisfies the 25% rule without exceeding the maximum available extended supervision for the base offense. We are reluctant to order this modification, however, because it is also clear from the court's remarks at resentencing that it intended for Kleven to serve a total of eleven years' initial confinement, which could properly be ordered because it is less than the 11.25–year maximum term of confinement applicable to the enhanced offense.

¶ 30. Alternatively, we could vacate the present sentence and remand for resentencing consistent with the legal conclusions reached in this opinion. We conclude that this is the proper remedy. Unlike in *Jackson*, the corrected calculations that flow from our reading of the applicable statutes may well have a practical effect

---

bifurcation was therefore harmless. The State affirmatively requests that we remand for resentencing. We agree with the State's concession that Kleven's sentence must be set aside. Defendants are entitled to be sentenced on correct information and on a correct understanding of the law. Had the circuit court understood that the maximum confinement for Kleven's base offense was two and one-half years, we cannot be certain on the present record that it would not have imposed less than eleven years of confinement.

on Kleven's sentence. *See Jackson*, 270 Wis. 2d 113, ¶¶ 10, 44. A new, properly bifurcated sentence may, but need not necessarily, result in a shorter term of confinement. If the circuit court determines that nine years and nine months of confinement are sufficient to accomplish its original sentencing purposes in light of an additional one year and three months of extended supervision, it may impose the sentence we declined to order in the preceding paragraph. If, however, the court determines that eleven years of confinement are necessary to its sentencing purpose, that term of confinement may be retained, and two years, six months of extended supervision ordered so as to accomplish a proper bifurcated sentence for Kleven's enhanced offense.

¶ 31. In sum, as we did in *Volk*, we conclude that resentencing is required:

> As we have explained, a sentence under the truth-in-sentencing law consists of a term of confinement and a term of extended supervision. These two components form a symbiotic relationship with the length of one necessarily influencing the length of the other and the overall length of the bifurcated sentence. Although the sentencing court imposes two discrete terms—one of confinement and one of extended supervision—it remains that the end product is but a single sentence. When a crucial component of such a sentence is overturned, it is proper and necessary for the sentencing court to revisit the entire question. If we held otherwise . . . we would produce a sentence based on mathematics, rather than an individualized sentence based on 'the facts of the particular case and the characteristics of the individual defendant.'

*Volk*, 258 Wis. 2d 584, ¶ 48 (citation omitted).

## CONCLUSION

¶ 32. For the reasons discussed above, we reverse the appealed judgment and order, and we remand for resentencing consistent with the conclusions in this opinion. In resentencing Kleven, the circuit court shall proceed on the basis of the following understandings: (1) the maximum term of imprisonment for an attempted third-degree sexual assault committed on August 2, 2002, is five years; (2) the maximum term of confinement applicable to the base offense is two and one-half years; (3) the penalty enhancers for threatening the use of a dangerous weapon and for habitual criminality may be applied to only the term of confinement; (4) for the penalty enhancers to be applicable in sentencing Kleven, the court must impose an overall sentence of imprisonment that exceeds the five-year maximum term of imprisonment for Kleven's base offense; (5) the maximum term of confinement that may be ordered is eleven years, three months; and (6) a term of extended supervision must be ordered that equals at least 25% of the term of confinement, *except* that no more than two years, six months of extended supervision may be ordered, regardless of the length of confinement ordered.

*By the Court.*—Judgment and order reversed and cause remanded with directions.